**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF FAYETTEVILLE et al., Plaintiffs,**

v.

**FEDERAL HOME LOAN BANK BOARD et al., Defendants.**

Civ. No. F–76–54–C.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Feb. 1, 1977.
Supplemental Opinion Feb. 25, 1977.

James B. Blair, Crouch, Blair, Cypert & Waters, Springdale, Ark., for plaintiffs.

Bradley D. Jesson, of Hardin, Jesson & Dawson, Fort Smith, Ark., for Superior Federal Sav. and Loan Ass'n.

Harold B. Shore, John E. Gunther, Washington, D.C., for Federal Home Loan Bank Bd., Garth Marston and Grady Perry.

Hermann Ivester, Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., for Fayetteville Sav. and Loan Assn.

## MEMORANDUM OPINION

PAUL X WILLIAMS, Chief Judge.

This is an action to review a resolution of the Federal Home Loan Bank Board permitting Superior Federal Savings and Loan Association of Fort Smith, Arkansas, to establish a branch facility in Fayetteville. This Court has jurisdiction pursuant to 28 U.S.C. § 1331(a), 12 U.S.C. § 1464(d)(1) and 5 U.S.C. §§ 701 et seq.

■ The defendants are the Federal Home Loan Bank Board, two individual members of the Board and Superior Federal, the institution authorized to establish the branch office. The plaintiffs are state and federally chartered savings and loan associations which protested Superior's application in the administrative proceedings. Though state chartered institutions lack standing to sue the Board, they can sue its individual members. (12 U.S.C. § 1464(d); *Central Savings and Loan Association v. Federal Home Loan Bank Board,* 269 F.Supp. 965 (E.D.Pa.1967); *Bank of Ozark v. Federal Home Loan Bank Board,* 402 F.Supp. 162, 165 (W.D.Ark.1975).

On May 7, 1976, Superior Federal Savings and Loan Association of Fort Smith filed application with the Board to establish a branch office at the Northwest Plaza, a shopping mall located in Fayetteville, Arkansas. Notice was published in accord with 12 C.F.R. § 545.14(g)(1). The plaintiffs filed formal protests. All parties supplied relevant economic data to the Board's regional representative, Supervisory Agent,

H. B. Proctor, who heard oral arguments on July 29, 1976. All evidence, transcripts of oral argument and the supervisory agent's recommendations were then forwarded to the Board's staff in Washington, D. C., who studied the record and summarized its findings and recommendation into a "staff digest." On September 23rd, the Board passed Resolution 76–722 which granted Superior's application.

On October 2, 1976, plaintiffs instituted this suit, accompanying their complaint with motions for a temporary restraining order or preliminary injunction. At the hearing called in response to the motion for a preliminary injunction, defendant, Superior, promised to take no action toward the establishment of the branch if the matter could be finally resolved within a reasonable length of time and the plaintiffs withdrew their motion. The Court ordered the Federal Home Loan Bank Board to file a copy of the administrative record with the clerk of the court and established a schedule for the filing of cross motions for summary judgment.

The first issue is whether the Board made available the complete administrative record. Plaintiffs contend that the Board should disclose the recommendations of Supervisory Agent Proctor, the advice of the Board's Washington staff, and certain financial reports about Superior and plaintiffs.

In certain situations the Administrative Procedure Act provides for judicial type hearings in which the party or parties have an opportunity to present oral evidence and the presiding officer makes findings of fact in reliance on the demeanor of the witnesses testifying at the hearing. See 5 U.S.C. §§ 556 and 557. The conclusions or opinions of the presiding officer on "demeanor evidence" are binding on the agency and are properly made part of the administrative record. In contrast to the judicial type of hearing, the oral argument afforded branch applicants and protestants before the Federal Home Loan Bank Board does not provide for the introduction of any oral evidence. Compare 12 C.F.R. §§ 545.-

14(h), 509.14 with 12 C.F.R. §§ 509.1, 509.6. The parties are merely provided an opportunity to highlight and summarize the written evidence which is before the presiding officer.

The presiding officer's recommendations are based entirely on the written record. The same written record as well as a transcript of the oral argument is before the Board when it renders its decision. The recommendation of the presiding officer who observed counsel's demeanor cannot be said to be crucial to the Board's ultimate decision. His recommendations are traditionally excluded from the administrative record of the case on the theory that its importance to the agency's final decision is greatly outweighed by the public policy of fostering frank and open discussions between the civil servant and his superior which would be jeopardized if the lower-esch-elon public servant were compelled to disclose his advisory opinions. *Kaiser Aluminum and Chemical Corp. v. United States,* 157 F.Supp. 939, 141 Ct.Cl. 38 (1958); *E.P.A. v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Freeman v. Seligson,* 132 U.S.App.D.C. 56, 405 F.2d 1326 (1968); *Miller v. Smith,* 292 F.Supp. 55 (S.D.N.Y. 1968); *S.E.C. v. Shasta Minerals & Chemical Co.,* 36 F.R.D. 23 (D.Utah 1964); *Lyons Savings and Loan Assoc. v. Federal Home Loan Bank Board,* 377 F.Supp. 11 (N.D.Ill. 1974); *Winnetka Savings and Loan Assoc. v. Home Federal Savings and Loan Assoc. of Chi.,* 377 F.Supp. 11 (N.D.Ill.1975). Contra: *Community Savings and Loan v. Federal Home Loan Bank Board,* 68 F.R.D. 378 (E.D.Wis.1975). The Freedom of Information Act expressly exempts internal recommendations of an agency's own staff. 5 U.S.C. § 552(b)(5), *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975).

Some courts have approached the question of staff advice differently, holding that it is technically part of the administrative record because it was considered by those persons who made the final decision of the

**458**

agency, but that the predecisional intra-agency staff advice need not be disclosed because it is privileged. *Smith v. F.T.C.*, 403 F.Supp. 1000, 1017–1018 (D.C.Del.1975); *National Courier Assoc. v. Board of Governors*, 170 U.S.App.D.C. 301, 516 F.2d 1229, 1241 (1975).

■ In light of the above discussion we find that plaintiffs' contentions concerning disclosure of the recommendations of Supervisory Agent Proctor and the advice of the Washington staff, have no merit.

■ Plaintiffs have also urged the Board to disclose certain reports concerning the financial condition of Superior and some of the protestants. We recognize the extremely sensitive nature of this information and that it is privileged from disclosure. 12 C.F.R. § 505.5(a)(2), 5 U.S.C. § 552(b)(4) and (b)(8); *National Parks and Conservation Association v. Morton*, 162 U.S.App.D.C. 223, 498 F.2d 765 (1974). Though plaintiffs urge the Court to examine this information in camera, we find it unnecessary. The Board's decision is supported by "some evidence" presently before the Court. See *First National Bank of Fayetteville v. Smith*, 508 F.2d 1371 (8th Cir. 1974). Even if the financial reports of concern to the plaintiffs were non-supportive of the Board's decision, our holding in this case could not be affected, as we are not to weigh the evidence and we are not to apply the substantial evidence test. *First National Bank of Fayetteville v. Smith, supra*; *Bank of Ozark v. Federal Home Loan Bank Board*, 402 F.Supp. 162 (W.D.Ark. 1975). Instead we are to make a thorough search of the record to determine if there is any rational basis for the Board's action and that it is in accord with law. *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (reviewing Comptroller's action); *Bank of Ozark v. Federal Home Loan Bank Board*, 402 F.Supp. 162 (W.D.Ark.1975) (standard for reviewing Comptroller's decision applies to decisions of the Federal Home Loan Bank Board); *First National Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974) ("some support in the record"). This standard for review is often phrased as whether the board acted "arbitrarily and capriciously or abused the broad discretion vested in it," *Bank of Ozark, supra*, at 167. This standard satisfies the requirements for review enunciated by the United States Supreme Court in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). See *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

In its resolution 76–722, the Board found a necessity existed for the branch office proposed by Superior; that there was a reasonable probability of its usefulness and success; and that it could be established without undue injury to properly conducted existing local thrift and home-financing institutions. The Board must find the foregoing three conditions to exist before it authorizes the establishment of a branch office. 12 C.F.R. § 545.14(c).

■ We have examined the administrative record and find that the record contains not only some evidence but also a great deal of evidence to support the Board's conclusions.

For its branch office, Superior proposes to build a two-story free-standing building containing approximately 4000 square feet near the entrance of the Northwest Arkansas Plaza. The Plaza is an enclosed shopping center containing 445,000 square feet of retail space and housing fifty-five tenants. It has 2460 parking spaces. It is located on United States Highway 71 in Fayetteville, but less than .3 of a mile from the southern city limits of Springdale, Arkansas.

The Board defines the primary market area (PMA) as all of Fayetteville within its corporate limits and extended to the north to include that part of Springdale south of Arkansas Highway 68, as far east as Washington County Road 87 and as far west as the western corporate boundary of Fayetteville. Plaintiffs contend that the PMA was delineated in an unreasonable manner so as to include the residential sections of Springdale but to exclude the two home loan associations operating in Springdale.

■ Where the PMA lines are located is a question best left to the Board's discretion. Such decisions are estimates of where the applicant's customers will come from if the application is granted. 60% of the Mall's customers come from the north. Plaintiffs argue that this statistic proves the PMA should have included all of Washington and Benton Counties, or at least all of Springdale. Table I-4 tendered by plaintiff, First Federal Savings and Loan of Fayetteville, breaks down the new accounts opened at its Mall branch to show the residence of the customer. The tables indicate that between April 24, 1972 and September 30, 1973, over 70% of those persons opening new savings accounts resided in Fayetteville, whereas less than 24% resided in Springdale. In light of these statistics, we cannot say that the Board's delineation of the market area is arbitrary, capricious or an abuse of its discretion.

The Court also notes the accessibility of the Mall to those persons residing in Springdale near Highway 71, as well as the population growth projections. The 1970 census revealed that Fayetteville had a population of 30,729, an increase of 51.6% from 1960. Its population in 1975 was estimated at 36,704, an increase of 19.4% from 1970, and it was projected that Fayetteville's population will reach 42,555 in 1980. While the persons per household decreased between 1970 and 1975, the median family income had almost doubled. The population figures within the PMA are equally impressive, although they project less growth within Springdale than in Fayetteville.

The record reveals that the Fayetteville-Springdale area has a large potential for new home construction which will require an accelerated pace of mortgage lending. The Northwest Arkansas Regional Planning Commission has indicated that approximately 16,000 new housing units will be needed to meet Fayetteville's housing requirements in the next 25 years. Approximately 7500 acres remain available to meet these needs. The Planning Commission also estimated that Farmington and Springdale will require an additional 8,000 housing units. These statistics not only support the Board's delineation of the PMA, but also the Board's finding that the application should be granted.

■ Presently there are two home loan institutions in Fayetteville: Fayetteville Savings and Loan Association and First Federal Savings and Loan Association of Fayetteville. First Federal maintains its main office near the older business district of Fayetteville and also has a branch office within the Northwest Arkansas Plaza. Subsequent to oral argument concerning Superior's application, Fayetteville Savings and Loan applied to the State agency for permission to install a branch facility less than one mile from Superior's proposed site. So at the time Superior's application was granted, there were only three savings and loan offices within Fayetteville's city limits. At the time of oral argument, Fayetteville Savings and Loan Association's assets were approximately $39,998,000.00 and those of First Federal of Fayetteville were $47,657,000.00. Since the opening of First Federal's branch at the Northwest Plaza, approximately $3,500,000.00 in new savings originated there.

The record reflects that none of the three existing saving and loan offices within Fayetteville are open on Saturday for the convenience of customers or provide customers with a savings account which draws interest but on which customers may make withdrawals to pay bills. Neither First Federal Savings and Loan of Fayetteville nor Fayetteville Savings and Loan make VA or FHA loans directly to qualified persons. First Federal asserts that it satisfies this need, but the record reveals that when a prospective borrower contacts First Federal about an FHA or VA loan, the borrower is referred to a realty company where a former mortgage banker handles the matter. There is also evidence that commercial banks have made many more mortgage loans in Fayetteville since 1973 than have the savings and loan institutions. In the nation as a whole, saving and loan associations by far out paced commercial banks in

mortgage lending. For the year 1975, there were 208 FHA and VA loans recorded in the Washington County Circuit Clerk's office only twenty of which were financed by First Federal of Fayetteville.

When it filed its application, Superior, whose home office is approximately sixty miles from Fayetteville, already had accounts in excess of $250,000.00 and mortgage loans exceeding $1,700,000.00 in the Fayetteville-Springdale area. Superior's Fayetteville branch office will provide drive-up windows, teller facilities and quarters for taking loan applications. It proposes to be in operation on Saturdays and Friday evenings to better serve those customers who maintain regular working hours. It will handle FHA and VA loans without sending the customer elsewhere and it will provide its customers with a service similar to a checking account.

The record amply supports the Board's finding that necessity existed for the branch office proposed by Superior and that there was a reasonable probability of its usefulness and success.

Of the two home loan institutions operating in Fayetteville, only First Federal of Fayetteville asserts that the Superior office would cause it any undue harm. According to the record, First Federal's Mall branch has generated over 1600 new savings accounts totaling $3,500,000.00 since its opening in 1972. The financial strength of First Federal and its well established customer base amply support the Board's findings of no undue harm.

The second institution alleging undue injury is Washington Federal Savings and Loan of Springdale, a relatively young institution which opened in May, 1973. The Board's finding of no undue injury to this association is supported by the evidence which demonstrates that Washington Federal is a well established, growing institution. Though new competitors are usually considered harmful by existing institutions, this does not mean that the competition will in fact result in undue injury.

■ Plaintiffs contend the Board overlooked that one of the Springdale institu-

tions, American Savings and Loan, was granted permission by the state agency to move its main office to U.S. Highway 71, 2.3 miles north of Superior's proposed site and to maintain its old headquarters as a branch facility. This court cannot assume such fact was overlooked by the Board. American's protest recited that it had already received permission from the state and construction had begun. All parties had ample opportunity to present written evidence on this point and to discuss it at oral argument. We cannot chart the subjectives of the Board's decision and therefore must find that the Board considered the new facility of American Savings and Loan, but in its discretion chose to grant Superior's application, a decision which is supported by the evidence in the administrative record.

■ Plaintiffs have pointed out that the summary of factual material compiled by the Board's Washington staff contain errors. Particularly, they are concerned about the recitation that the population of the PMA had increased 29.6% since 1975. We find this error to be harmless since we cannot assume that the Board relied on it in deciding to grant Superior's application. Four pages later in the staff digest, the population is correctly shown to have increased 29.6% between 1970 and 1975. The correct figures are also recited several times in the complete administrative record.

The plaintiffs point out that American Savings and Loan's new main office, to be located on Highway 71, 2.3 miles from Superior's proposed site, is not included in the staff digest's list of institutions operating within the Primary Market Area. Plaintiffs contend that the matter should be remanded to the Board to discover if the Board relied on this error in the staff digest. In discussing whether the Comptroller relied on erroneous information, the Court of Appeals for the Fifth Circuit stated as follows:

> To say that one fact was erroneous and that another fact was askew is not to infest the Comptroller's exercise of dis-

cretion with the scent of arbitrariness or capriciousness sufficient to set aside his decision. These are words of pejoration and must be supported by factual muscularity. *Sterling National Bank of Davie v. Camp*, 431 F.2d 514 (5th Cir. 1970).

■ Since the entire record is replete with evidence supporting the Board's decision, we decline to remand this matter to determine the subjective state of mind of the Board at the time it granted Superior's application. The Board's resolution 76–722 sets forth its reasons for granting the application as explicitly as is required. *Federal Home Loan Bank Board v. Rowe*, 109 U.S. App.D.C. 140, 284 F.2d 274 (1960).

After the cross-motions for summary judgment were argued before the Court one plaintiff, Fayetteville Savings and Loan Association, filed a motion to amend the complaint. It subsequently took the position that the amendment should be filed without leave of court because no responsive pleading had been filed by either defendant. F.R.C.P. Rule 15(a) provides in part as follows:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served, . . . .

■ The responsive pleadings referred to in Rule 15(a) are those permitted under Rule 7(a) and do not include motions for summary judgment. Therefore, plaintiff's amended complaint will be filed without leave of the Court. *Miller v. American Export Lines, Inc.* 313 F.2d 218 (2nd Cir. 1963); *Clardy v. Duke University*, 299 F.2d 368 (4th Cir. 1962); 3 *Moore's Federal Practice* § 15.07[2]. However, we find that the merits of the case are such that if it were discretionary we would permit the filing. The case should and will be decided on its merits as reflected by the record.

■ The first issue raised by Fayetteville Savings and Loan in its amended complaint is that the Federal Home Loan Bank Board granted Superior's branch application in contravention of its own regulations. Fayetteville Savings and Loan contends that the Board does not have authority to approve an application unless the majority of the organizers, directors and stockholders reside or do business in the community to be served. Superior has its home office in Fort Smith, sixty miles from the proposed Fayetteville branch facility, and Superior did not show that any of its organizers, directors or stockholders either lived or conducted business in Fayetteville.

Fayetteville Savings and Loan has misconstrued the applicable regulations. The requirement that an institution's organizers, directors and stockholders reside or do business in the community to be served, is applicable to those institutions seeking a federal charter or insurance from the FSLIC. It is not pertinent to approval of applications for branch facilities. The regulations which govern the establishment of branch offices set out the criteria the Board will consider in ruling on a branch application and there is no requirement of residence of the concerned individuals. See 12 C.F.R. § 556.5. The residency criteria applicable to those seeking FSLIC insurance or an original charter should not be read into the standards governing the establishment of a branch facility.

■ Fayetteville Saving and Loan's second contention is that 12 C.F.R. § 556.-5(b)(5) erroneously effected a shift in the burden of proof from the applicant to the protestants. 12 C.F.R. § 556.5(b)(5) is in part as follows:

(5) As a general policy, the Board encourages the establishment of branch offices and other office facilities by Federal associations in communities and market areas which either are not serviced or are underserviced by existing savings and loan facilities. In addition, the Board favors increasing the level of competition, by permitting more than one savings and loan facility in a market area, to provide convenient, alternative choices resulting in better service to the public. Since the Board's general policy is to encourage expansion through branching, protests to applications for office facilities will have to be increasingly persuasive and factual-

ly documented to adversely affect the Board's decisions on such applications.

We do not find that this regulation as applied by the Board to Superior's branch application erroneously shifted the burden of proof to the protestants. Superior met its burden by providing ample evidence of the need for the branch office, its probability of success and the lack of undue harm to existing institutions.

■ Fayetteville Savings and Loan's third contention is that the Board erred in omitting discussion of whether an environmental impact statement was required. The record before the Board indicates that the proposed branch office would be located in the large parking lot of an existing shopping center. The record also reflects that the shopping center is adjacent to a heavily trafficked, four-lane highway. The record also demonstrates that the branch facility will not cause the shopping center to extend its parking lot, nor will it appreciably increase the amount of traffic to and from the mall. Given these facts, we cannot say that the Board erred in failing to discuss the necessity of an environmental impact statement.

■ The fourth issue raised in Fayetteville Savings and Loan's amended complaint concerns whether the Board erred in authorizing the branch office since the area is served by state chartered associations. In support of this proposition, it quotes certain language from *West Helena Savings and Loan v. Federal Home Loan Bank Board*, 417 F.Supp. 220 (E.D.Ark.1976), a case concerning the right of the FSLIC to deny insurance to state-chartered building and loan institutions. 12 U.S.C. § 1464(e) provides as follows:

> (e) No charter shall be granted except to persons of good character and responsibility, nor unless in the judgment of the Board a necessity exists for such an institution in the community to be served, nor unless there is a reasonable probability of its usefulness and success, nor unless the same can be established without undue injury to properly conducted existing

local thrift and home-financing institutions.

As can be seen from the statute itself, the question is if the federally chartered institution would cause undue injury to existing state-chartered associations, not whether any state-chartered associations existed in the area. *Elm Grove Savings and Loan Association v. Federal Home Loan Bank Board*, 391 F.Supp. 1041 (E.D.Wis.1975) (Board's approval of branch facility was upheld, even though state-chartered institution was also serving the area); *Bank of Ozark v. Federal Home Loan Bank Board*, 402 F.Supp. 162 (W.D.Ark.1975).

Having determined that the Federal Home Loan Bank Board did not err in its application of the law and that there is evidence in the record to support the Board's decision, we find that the plaintiffs' petition for review should be denied.

The Clerk will prepare an order in accord with this opinion.

## SUPPLEMENTAL OPINION

On February 1, 1977, this Court entered an order dismissing the plaintiffs' petition to review an action of the Federal Home Loan Bank Board. In the opinion explaining the dismissal, this Court noted that subsequent to oral argument on the cross-motions for summary judgment, First Federal Savings and Loan Association filed an amended complaint which raised four new issues. This Court discussed the merits of those issues in its opinion also filed on February 1.

Pursuant to rules 59 and 60, the plaintiffs have moved the Court to amend its opinion by striking any mention of the four issues raised by First Federal in its amended complaint. The plaintiffs contend that no motion for summary judgment had been filed by either party as to those issues and therefore, the Court should withhold consideration of those issues until a motion for summary judgment or other motion is placed before the Court.

■ We find it is proper to supplement the previous opinion. As to the four

issues raised through amended complaints, we find that these issues were not presented to the Federal Home Loan Bank Board and that they cannot be heard for the first time upon judicial review. *Lyons Savings and Loan Assoc. v. Federal Home Loan Bank Board,* 377 F.Supp. 11 (E.D.Ill.1974). But the matter will not be remanded to the Board for consideration of those four issues. Remand to an administrative agency is required only if there is solid reason to believe that without the subsidiary finding · the agency would not have arrived at the same conclusion. *Communist Party v. Subversive Activities Control Board,* 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1960). Discussion of the merits of the four supplemental issues is applicable in that we decline to remand the matter to the Board because we find they are so lacking merit as to make remand unnecessary.

This Court notes that Superior Federal Savings and Loan Association was granted authority to establish a branch facility in Fayetteville, Arkansas, on September 23, 1976. After initiation of this action, Superior consented to delay construction until the matter was resolved, provided that a final disposition could occur within a reasonable length of time.

Other institutions in the Fayetteville area either were in the process of constructing facilities near Superior's proposed site or were petitioning the applicable agencies to obtain permission to establish facilities near there. All parties recognized the harm which would result to Superior if the reviewing procedures were drawn out.

With this in mind, the parties agreed to present cross-motions for summary judgment and the Court established a schedule for the filing of briefs and oral argument. Some delay was occasioned because the Federal Home Loan Bank Board could not get copies of the administrative record distributed as promptly as thought. The delay was not caused by any act or omission on the part of Superior.

After the Court established the briefing schedule and scheduled the matter for oral argument, First Federal Savings and Loan Association of Fayetteville retained separate counsel. However, there is nothing to indicate First Federal was not fully apprised of the briefing schedule and the necessity for an expeditious determination. Though First Federal knew that delay could harm Superior it nevertheless waited until after oral argument and while the matter was under advisement to file its amended complaint.

First Federal's motion, now before the Court which has been adopted by all plaintiffs is similar to a motion to reopen so that additional evidence may be introduced or so that additional motions for summary judgment can be filed, briefed and heard on the basis of the existing record. To the extent that the motion may lead to introduction of new evidence, it is a matter within the discretion of the Court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). We find that the case should not be reopened. The completeness of the administrative record has been fully litigated and the plaintiffs' have not even attempted to justify their tardiness in raising the issues not fully briefed in the course of the cross-motions for summary judgment.

To the extent that plaintiffs' motion does not seek the introduction of additional evidence, the motion should also be denied. This Court has scrutinized the administrative record and found that the additional issues lack merit.

The Clerk will prepare an order denying plaintiffs motion to amend judgment in accord with this supplemental opinion.