CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,

v.

FEDERAL HOME LOAN BANK BOARD and First Federal Savings and Loan Association of Wisconsin, Defendants.

WEST ALLIS SAVINGS AND LOAN ASSOCIATION, Plaintiff,

v.

FEDERAL HOME LOAN BANK BOARD and First Federal Savings and Loan Association of Wisconsin, Defendants.

Nos. 75-C-343 & 75-C-416.

United States District Court, E. D. Wisconsin.

Oct. 28, 1977.

Frisch, Dudek & Slattery by Edward A. Dudek, Milwaukee, Wis., for City Federal Sav. & Loan Assn.

John C. Shabaz, West Allis, Wis., for West Allis Sav. & Loan Assn.

Quarles & Brady by David E. Jarvis, Milwaukee, Wis., for First Federal Sav. & Loan Assn.

Harold B. Shore, John E. Gunther, Harvey Simon, Washington, D.C., for Federal Home Loan Bank Bd.

DECISION and ORDER

MYRON L. GORDON, District Judge.

I. INTRODUCTION

In these consolidated actions, City Federal Savings and Loan Association (City Federal), a federally-chartered savings and loan association, and West Allis Savings and Loan Association (West Allis), a state-chartered institution, seek judicial review of resolution no. 75–400 of the Federal Home Loan Bank Board (the Board). The resolution authorized First Federal Savings and Loan Association of Wisconsin (First Feder-

al), a federally-chartered institution, to establish a "limited facility branch office" pursuant to 12 C.F.R. § 545.14(j), in West Allis, Wisconsin. The plaintiffs also seek an injunction prohibiting First Federal from operating the approved facility.

These actions are presently before the court on the parties' cross-motions for summary judgment, and the plaintiff City Federal's motion to strike an affidavit filed by the defendants in support of its summary judgment motion. West Allis has not filed briefs on the present motions, electing instead to adopt City Federal's briefs. Thus, although this decision refers primarily to City Federal, it is dispositive also as to West Allis' claims.

On August 24, 1974, First Federal applied for Board approval of a limited facility branch office in downtown West Allis, Wisconsin. The proposed location was 900 feet west of the plaintiff West Allis' location and 240 feet west of a City Federal branch office. The City Federal branch office itself had been authorized by the Board a year earlier and was still operating temporarily out of a trailer at the time of First Federal's application.

In accordance with the procedures set forth in 12 C.F.R. §§ 545.14 and 556.5, the plaintiffs protested against Board approval of First Federal's application. On April 29, 1975, the Board adopted resolution no. 75–400, approving the application, and shortly thereafter the plaintiffs commenced this action for judicial review of the Board's resolution.

The plaintiffs contend that (1) the Board acted beyond the scope of its authority because the limited facility branch office regulation upon which it based its resolution is contrary to the provisions of 12 U.S.C. § 1464(e); and (2) the Board's decision was arbitrary, capricious, an abuse of discretion, and not in accordance with law.

In my opinion, both the regulation and the Board's resolution are valid. Summary judgment will therefore be granted to the defendants.

## II. THE LIMITED FACILITY BRANCH OFFICE REGULATION

A federal savings and loan association that desires to establish a branch office must furnish information in support of its application showing that three tests have been met:

"(1) There will be at the time the branch is opened a necessity for the proposed branch office in the community to be served by it; (2) there is a reasonable probability of usefulness and success of the proposed branch office; and (3) the proposed branch office can be established without undue injury to properly conducted existing local thrift and home-financing institutions." 12 C.F.R. § 545.-14(c).

Since 1970, many of the branch regulations have been amended or replaced. Included in this process was the creation of 12 C.F.R. § 545.14(j), which provides:

"*Limited facility branch office*—(1) *General.* In connection with any application for permission to establish a branch office which the Board has determined does not satisfy in full the requirements of paragraph (c) of this section as to necessity and reasonable probability of usefulness and success, but such tests, in the opinion of the Board, are met to a degree which would support a limited operation of a branch office, the Board may approve the application as a limited facility branch office. Such an office if approved by the Board, will be subject to limitations imposed by the Board as to one or more of the following:

"(i) Number and type (supervisory, clerical, teller) of personnel to be utilized;

"(ii) Physical size and characteristics;

"(iii) Amount of capital investment by the applicant; and

"(iv) Extent of activities.

"In addition, an applicant for permission to establish a branch office under this section may propose that the office be a limited facility branch office in a case where the applicant believes that the tests in paragraph (c) of this section can be met only to a degree which would

support a limited operation of a branch office, and the applicant may propose one or more of the limitations to be imposed by the Board. A limited facility branch office may be advertised to the public as a branch office."

City Federal contends that this regulation is void as a sham created merely to circumvent the requirements of section 5(e) of the Home Owners' Loan Act of 1933, as amended and codified at 12 U.S.C. § 1464(e). The latter section provides:

"No charter [of a federal savings and loan association] shall be granted except to persons of good character and responsibility, nor unless in the judgment of the Board a necessity exists for such an institution in the community to be served, nor unless there is a reasonable probability of its usefulness and success, nor unless the same can be established without undue injury to properly conducted existing local thrift and home-financing institutions."

City Federal argues that the Board's power to approve branch offices is limited by the three tests set forth in section 5(e), namely (1) necessity; (2) reasonable probability of usefulness and success; and (3) creation without undue injury to properly conducted existing institutions. City Federal emphasizes that 12 C.F.R. § 545.14(j) softens the first two tests by requiring that, in the case of a limited facility branch office application, the first two tests need only be met to a degree which *in the Board's opinion* supports such an office. It is therefore urged that § 545.14(j) unlawfully permits the establishment of savings and loan institutions that do not meet the requirements set forth in section 5(e).

Although the threefold requirement of section 5(e) is incorporated also into 12 C.F.R. § 545.14(c), the regulation governing "full" branch facilities, nothing in section 5(e) *requires* that branch applicants meet those tests. Thus, it is the regulation rather than the statute that requires "full" branch applicants to meet the three tests. I therefore believe that no statutory mandate is violated by lessening the requirements for limited facility branch office applicants.

In *First National Bank of McKeesport v. First Federal S. & L. Ass'n of Homestead,* 96 U.S.App.D.C. 194, 225 F.2d 33, 36 (1955), the court considered the question whether the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., applies to proceedings for branch approvals. Holding that an agency hearing pursuant to the Administrative Procedure Act is not required for branch applications, the court distinguished between branch applications and bank charters:

"While neither Section 5(e) nor any other section of the act specifically requires an agency hearing in granting an original charter, we may assume for the purposes of these cases that such a hearing is required in that instance. Even so, *the same formalities are not required in the consideration of an application for a branch.* Section 5(e) quoted above refers simply to 'charters,' and governs the Board's consideration of an application for the grant of a charter to establish an 'institution.' *A branch, however, is not an 'institution' and does not require a charter, its establishment being of an entirely different character.*

. . . . .

"We think it clear that, even if it be assumed that Section 5(e) requires an agency hearing on the original grant, there is no such requirement on an application for the establishment of a branch." 96 U.S.App.D.C. at 197, 225 F.2d at 36. (emphasis supplied).

Furthermore, it has been recognized that once an original charter is approved, the Board may approve the establishment of lesser facilities without meeting the criteria set forth in section 5(e). In *Central S. & L. Ass'n of Chariton, Iowa v. Federal Home Loan Bank Board,* 293 F.Supp. 617 (S.D.Iowa 1968), aff'd 422 F.2d 504 (8th Cir. 1970), the court rejected the contention that a regulation governing mobile bank facilities was invalid because of its incongruence with section 5(e):

"[P]laintiffs allege that section 545.14–4 is invalid because the criteria for the establishment of a mobile facility are not the same as those specified in section 5(e) of the Act. . . .

"It will be noted that this section refers simply to 'charters,' and governs the Board's consideration of an application for the grant of a charter to establish an 'institution.' A mobile facility, however, is not an 'institution' and does not require a charter, its establishment being of an entirely different character. As stated above, this Court believes that once an institution is established under the grant of an original charter, the establishment of branches and mobile facilities is committed to the discretion of the Board." 293 F.Supp. at 622.

█ I believe that the limited facility branch office regulation is valid for the same reason that the mobile facility regulation was held valid in *Central S. & L. Assn. of Chariton, Iowa.* Once an original charter is granted, the Board has wide discretion to approve such lesser facilities as it deems appropriate. See *Elm Grove S. & L. Ass'n v. Federal Home Loan Bank Bd.,* 391 F.Supp. 1041, 1043 (E.D.Wis.1975).

Finally, it is significant that the section 5(e) criteria remain the focus of the Board's inquiry even under the limited facility branch office regulation. The applicant must still show that the first two criteria are met to a degree which, in the Board's opinion, support a limited facility branch office, and must satisfy the "undue injury" criterion to the same degree as any other branch applicant. The regulation further provides that if such a facility is approved by the Board it "will be subject to limitations imposed by the Board" relating to the size of the staff, office and capital investment.

Although the plaintiffs have presented some legislative history suggesting that the regulation's purpose was to extend banking services to unserved rural communities, no such limitation appears in the regulation or in an official statement of Board policy.

For all of these reasons, I find unpersuasive the plaintiffs' argument that § 545.-14(j) is contrary to 12 U.S.C. § 1464(e).

## III. PROPRIETY OF BOARD'S APPLICATION PROCEDURES

The procedure for branch applications is set forth in 12 C.F.R. §§ 545.14 and 556.5. An eligible savings and loan association must file an application with the Board, together with supporting information showing: (1) community need for the proposed branch; (2) reasonable probability of usefulness and success of the proposed branch; and (3) the proposed branch can be established without undue injury to properly conducted local institutions.

The applicant must then give notice of its application by publication in a newspaper of local circulation. Opponents ("protestants") may file written material in opposition to the application, and the applicant may file rebuttal material.

Any protestant may request oral argument on the merits of the application. The Board's supervisory agent notifies all parties who have filed material on the application and conducts an oral argument proceeding based on the written information already submitted. New material may be admitted if the supervisory agent finds that it constitutes substantive new matter. A transcript is prepared, and the supervisory agent prepares a recommendation supported by a summary and analysis of relevant information.

The supervisory agent forwards the application file and his recommendation to the Board's Office of Industry Development (OID) which prepares its own recommendation and forwards it, together with the application file and supervisory agent's recommendation, to the Board, which then approves or disapproves the application.

█ City Federal contends that OID violated the Board's branch office application procedures by compiling and including in its recommendation a comparative analysis of the savings deposits of each of First Federal's facilities. This was done on OID's

own initiative and without providing the protestants an opportunity to respond. It is claimed that the Board's regulations do not authorize the regional supervisory agent or OID to prepare a set of "secret facts" for the Board's use in considering branch applications.

In my opinion, the OID was authorized by Board regulations to undertake independent investigations of all matters pertinent to applications pending before the Board. 12 C.F.R. § 556.5(a)(2) provides:

"*Obtaining of additional information by Supervisory Agent.* The Supervisory Agent and the Office of Industry Development respectively may, in their discretion, request additional information from applicants or other persons and may make or cause to be made such inspection of the area to be served as they may deem advisable."

Furthermore, 12 C.F.R. § 556.5(a)(4) provides that the supervisory agent should forward the application file, together with his recommendation supported by a summary and analysis of relevant information, to the OID. The OID must then forward the application, together with its recommendation supported by "such additional summary and analysis of relevant information as it deems appropriate" to the office of the secretary of the Board.

These regulations thus authorize independent fact gathering by the OID for purposes of preparing its recommendation to the Board. The Board relies upon *Merchants & Planters Bank of Newport, Arkansas v. Smith,* 380 F.Supp. 354, 363 (E.D. Ark.1974), aff'd 516 F.2d 355 (8th Cir. 1975), in which a similar argument involving the comptroller of the currency was rejected as follows:

"It is contended that the Comptroller improperly received and considered certain materials submitted on behalf of the applicant which were not disclosed to plaintiffs and which plaintiffs had no opportunity to meet. The short answer to that contention is that under the statute and regulations plaintiffs were not entitled to a full adversary hearing in connec-

tion with the applications, and the Comptroller was not required to advise plaintiffs of each and every item of evidence or information that he might receive and which he might deem relevant. See *Sterling National Bank of Davie v. Camp,* supra, 431 F.2d [514] at 516–517."

I find this reasoning applicable to the instant case. In preparing its recommendations on branch applications, the Board's staff may properly conduct independent fact gathering without disclosing such factual information to the applicants, protestants, or any person outside of the Board's staff.

## IV. THE ADMINISTRATIVE RECORD

The record in this case, including the submissions of the applicant and protestants and the transcript of the oral argument, consists of 531 pages. The regional supervisory agent prepared an 8-page "digest and recommendation." The Office of Industry Development prepared a 7-page recommendation. These two items, together with the application worksheet and a proposed resolution for approval of the application, total 18 pages and are referred to by the Board as the "internal staff digest."

It is City Federal's contention that the entire administrative record for purposes of this court's review is the 18-page internal staff digest. It is urged that the Board may not rely upon the underlying 531 page record but must find support for its resolution only from the 18 page digest. This contention is premised on the assertion that the Board reads only the digest prepared by its staff and does not read the entire public administrative file.

I find City Federal's argument unconvincing. The Administrative Procedure Act directs that in determining the propriety of agency action, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706; *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). In fact, internal staff advice has traditionally been excluded from the administrative record for purposes of judicial review. *First Federal S. & L. Ass'n of*

*Fayetteville v. Federal Home Loan Bank Board,* 426 F.Supp. 454, 457 (W.D.Ark.1977). At best, courts have held that staff advice is only "technically part of the administrative record . . .." Id.

■ Moreover, the Board is afforded a presumption that they "have read and properly considered all items in the record in making their decision." *Birnberg v. Washington Metropolitan Area Transit Authority,* 389 F.Supp. 340, 343 (D.D.C.1975), citing *National Nutritional Foods Ass'n v. Food & Drug Admin.,* 491 F.2d 1141 (2d Cir. 1974); *Braniff Airways, Inc. v. C.A.B.,* 126 U.S. App.D.C. 399, 379 F.2d 453 (D.C.Cir. 1967). City Federal relies on an affidavit submitted by one of its attorneys who has had extensive experience in this field. The affidavit states that the Board's standard procedure is to make its decisions on branch office applications based upon its review of staff digests and recommendations, and the Board members do not read the application file. City Federal has not overcome the presumptive validity of the Board's decision-making procedure.

■ For all of the above reasons, I reject the contention that my review is confined to the internal staff digest. The whole administrative record, including the application file, is properly reviewable in this case.

## V. STANDARD OF REVIEW

In *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973), the Court held that the proper standard for judicial review of an agency decision is whether it "was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' as specified in 5 U.S.C. § 706(2)(A)." Some courts explain this standard as requiring "any rational basis for the Board's action." *First Federal S. & L. of Fayetteville v. Federal Home Loan Bank Board,* 426 F.Supp. 454, 458 (W.D. Ark.1977); *First National Bank of Fairbanks v. Camp,* 326 F.Supp. 541, 544 (D.D.C. 1971), aff'd 151 U.S.App.D.C. 1, 465 F.2d 586 (D.C.Cir. 1972), cert. denied, 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 (1973). Other courts require that there be "some

support in the record." *First National Bank of Fayetteville v. Smith,* 508 F.2d 1371, 1376 (8th Cir. 1974). See *Elm Grove S. & L. Assn. v. Federal Home Loan Bank Board,* supra, at 1042–43.

■ City Federal suggests that the rational basis test gives insufficient deference to the Supreme Court's decision in *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). I find no inconsistency between *Overton Park* and the rational basis test described above. In *Overton Park,* the Court stated at p. 416, 91 S.Ct. at p. 823:

> "Section 706(2)(A) requires a finding that the actual choice made was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' . . To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. (citations omitted). Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."

It has been held elsewhere that the rational basis test satisfies the requirements of *Overton Park. First Federal S. & L. Ass'n of Fayetteville,* supra, at 458. I see no reason for holding to the contrary.

## VI. ANALYSIS OF THE BOARD'S CONCLUSIONS

The factors which must be considered upon an application for a limited facility branch office are the same as those which must be considered in regard to ordinary branch applications: (1) necessity; (2) probability of usefulness and success, and (3) creation without undue injury to properly conducted existing local financial institutions. 12 C.F.R. § 545.14(c) and (j).

However, as noted in section II of this decision, the first two tests need not be met by limited facility branch applicants to the same degree as ordinary branch applicants. The former need only satisfy the first two

tests to a degree which *"in the opinion of the Board . . . would support a limit-ed operation of a branch office . . .."*

■ In view of the Board's discretion-ary power, judicial review of its decision on a limited facility branch office is even more circumscribed than review of its decision on a branch application. Upon judicial review with respect to the first two tests, this court should determine whether they were in fact considered by the Board. In con-sidering whether the Board's determination on this point is rationally supportable, it is the Board's opinion, not the court's which governs.

■ The Board's resolution does indeed recite, in the language of § 545.14(j), that "as to necessity and reasonable probability of usefulness and success, [the application] meets such requirements to a degree which would support a limited facility branch of-fice." Beyond this recital, it is clear from the administrative record, including the su-pervisory agent's recommendation and from the OID recommendation that the necessity and probability of usefulness and success factors were considered by the Board in its decision-making process.

The OID recommendation reports that "the proposed facility will provide addition-al service and convenience" to the primary service area residents. The supervisory agent's recommendation, although arriving at a contrary conclusion, reports that "[t]he applicant has not demonstrated a need for the proposed facility . . .." Further-more, the OID recommendation cited six factors which substantiate the ability of the city of West Allis to support First Federal's proposed facility. It is therefore apparent that the two factors were actually con-sidered by Board staff.

Moreover, First Federal's definition of the primary service area upon which the accuracy of its data supporting these two factors depends, finds support in the record. First Federal's economic consultant set forth an analysis which rationally supports the conclusion that First Federal's larger service area description is correct and the protestants' description of a smaller service area is erroneous. Record 268–79.

Accordingly, I conclude that there is a rational basis in the administrative record for the Board's opinion that the factors of necessity and probability of usefulness and success are present to a degree that would support a limited facility branch office.

The third test which must be met by a limited facility branch applicant is the showing that creation of the facility will not cause undue injury to properly conduct-ed existing institutions in the area.

■ City Federal has moved to strike the affidavit of Edward Eckert submitted by the Board in relation to this facet of its motion for summary judgment. Mr. Eckert is the supervisory agent who conducted the oral argument on this application, and he is also the co-author of the report recommend-ing against approval of First Federal's ap-plication. The affidavit recounts a relative-ly favorable history of the savings deposits growth of City Federal, West Allis, First Federal, and other nearby competitors since the approval of First Federal's facility.

I agree with the plaintiff that the affida-vit constitutes new evidence extraneous to the record before the Board. Therefore, the plaintiff's motion to strike will be granted. *Elm Grove S. & L. Assn.,* supra, at 1043.

■ I have considered City Federal's contention that the administrative record does not support the Board's conclusion that this third test has not been met; I have not been persuaded that the Board's decision is without a rational basis.

First, the record contains evidence that First Federal had already penetrated the primary service area, and thus, to some extent, would merely be servicing existing customers from its new facility without in-truding on existing local institutions. Rec-ord, 59–60, 249–50, 319–20. Secondly, all of the savings and loan associations in the primary service area had experienced in-creases in assets and savings deposits prior to the application. Record, 82–87, 117, 121. Thirdly, a survey conducted by the OID

compared the savings deposits growth of First Federal's competitors within a one mile radius of each First Federal facility and found generally that such competitors experienced growth despite First Federal's presence. While I agree with City Federal that this survey is of questionable evidentiary import, I cannot conclude that it is so utterly without significance as to provide no support for the Board's conclusion. Finally, the record contains evidence of an untapped potential for new savings deposits which could be captured by First Federal without injury to the plaintiffs. Record, 255, 299.

 City Federal urges that the Board erred by failing to consider the anti-competitive impact of First Federal's branch expansion program. To the extent this inquiry is relevant, it is already subsumed in the undue injury test. Beyond this, however, I reject City Federal's contention since 12 C.F.R. § 545.14(j) includes no such test. The absence of such a test is particularly significant given Congress's specific inclusion of this additional inquiry where deemed appropriate. See 12 U.S.C. § 1730a(e)(2). (Savings and Loan Holding Company Amendments of 1967). I find no authority to support City Federal's contention that this additional test must be considered.

## VII. CONCLUSION

I therefore conclude that the Board did not act arbitrarily or capriciously, and did not abuse its discretion in approving First Federal's application. It is not the function of this court to determine whether a different conclusion would also be reasonable; all that need be determined is whether the conclusion actually reached is rationally supportable. I believe that the Board's conclusion is rationally supportable and that summary judgment must be granted to the defendants.

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the plaintiffs' motions for summary judgment be and hereby are denied.

IT IS FURTHER ORDERED that the plaintiffs' motion to strike be and hereby is granted.

IT IS FURTHER ORDERED that these actions be and hereby are dismissed.