**CENTRAL ARKANSAS SAVINGS & LOAN ASSOCIATION, Conway, Arkansas and Security Savings & Loan Association of Conway, Arkansas**

v.

**FEDERAL HOME LOAN BANK BOARD, Andrew Diprete and Jay Janis and First Federal Savings & Loan Association of Little Rock, Arkansas.**

No. LR–C–80–151.

United States District Court,
E. D. Arkansas, W. D.

Aug. 1, 1980.

William Clay Brazil, Conway, Ark., for plaintiffs.

E. DeMatt Henderson, Little Rock, Ark., Paul W. Grace, Federal Home Loan Bank Board, Washington, D. C., for defendants.

## ORDER

EISELE, Chief Judge.

The plaintiffs, two savings and loan associations located in Conway, Faulkner County, Arkansas, filed this action for review[1] of the decision of the Federal Home Loan Bank Board (FHLBB) authorizing First Federal Savings and Loan Association of Little Rock, Arkansas, to establish a branch in Conway, pursuant to 12 U.S.C. § 1464(a). The record containing filings, letters and the transcript of the hearing held before the FHLBB's supervisory agent in Little Rock, as directed by FHLBB's regulations, is before the Court. The defendants have filed motions to dismiss or in the alternative for summary judgment. Plaintiffs have filed a motion for summary judgment and response. Because matters outside the pleadings must be considered, the Court will consider this as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (FRCP). See Rule 12(b), FRCP. Neither party asserts that there are genuine issues of material fact remaining.

The FHLBB was created by Congress to regulate savings and loan associations and to charter new associations or to allow the establishment of a branch if the Board finds: that a community needs an institution and it will be useful; that there is a reasonable likelihood of success; that the new institution will not unduly threaten properly managed institutions already in the community; and that the applicant's record of meeting the credit needs of its existing local communities is adequate. 12 C.F.R. § 545.14(c). The FHLBB's policy has been to encourage branching. 12 C.F.R. § 556.5(b)(5).

■ The standard of review of the decisions concerning branching is found in 5 U.S.C. § 706(2)(A):

. . . The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(a) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

\* \* \* \* \* \*

In making the foregoing determinations the court shall review the whole record or those parts of it cited by a party.

The Court has reviewed the record in comparison with the agency action, giving particular attention to those matters raised in the plaintiffs' response to the motion for summary judgment. The question now is, "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

■ The FHLBB is not required to make extensive findings of fact or give a detailed explanation for its decision. *See Madison County Building & Loan Ass'n., supra* at 396–398. In this case, its decision, adopted in Resolution No. 80–83, dated February 14, 1980, was that the applicant had shown the necessity for the branch, a reasonable probability of success and the improbability of injury to other institutions. The decision summarized its findings:

a. Faulkner County is the proposed market area (PMA) for First Federal Savings and Loan Association's proposed branch in Conway. The PMA is a realistic area with a strong economic base and good growth potential. The area has 10 commercial banking facilities but only four approved savings and loan offices. The establishment of this facility will improve the imbalance of S&L representation and provide the area with a

---

1. There is no question in recent cases about the reviewability of Board branching authorizations. *See, e. g., Madison County Building and Loan Ass'n. v. Federal Home Loan Bank*, 622 F.2d 393 at 395 (8th Cir. 1980).

more competitive choice of thrift and home-financing services.

b. The probability of success is good because the PMA has a median family income of $15,427 and a reasonable population base of 42,247. Additionally, the office will be situated in an area with substantial commercial draw and easy accessibility.

c. The possibility of undue injury is minimal. Savings and loans and the commercial banks are well established in the PMA and all appear to have a successful operation. The establishment of this facility should have no effect on any well managed and properly conducted institution or their ability to attract a reasonable share of the savings and loan market.

d. First Federal of Little Rock has a favorable community service record and there is no evidence in the protest material, the application or the Bank Board records of consumer complaints or of any CRA or nondiscrimination violations.

Certain elements of the complaint were apparently not considered on the record or at the hearing.[2] Failure to assert claims at the administrative level precludes review at the district court level. *See First Federal Savings & Loan Ass'n. of Fayetteville v. FHLBB*, 426 F.Supp. 454, 463 (W.D.Ark. 1977), *aff'd* 570 F.2d 693 (8th Cir. 1978). Nor may additional evidence be submitted now. This is not a *de novo* review of the agency decision but rather a review of the administrative record to see whether the agency decision was arbitrary and capricious in view of the record before it. *See Camp v. Pitts*, 411 U.S. 138, 141–42, 93 S.Ct. 1241, 1243–1244, 36 L.Ed.2d 106 (1973).

1.

■ Concerning finding (a) the plaintiffs state that there is an inaccuracy, there being two rather than 10 commercial banking facilities in Faulkner County. The plaintiffs go on to say, "[t]hat seemed to be the only announced factual basis used by the Federal Home Loan Bank Board in determining that there was a need for this proposed branch." Were that indeed the case the alleged inaccuracy would be of great importance. The record indicates that in fact there are two commercial banks with a total of 10 facilities within the Proposed Market Area (PMA), as stated by the Board. The language of the Board may have been confusing, but it accurately reflects the facts stated at B–6.1. The record shows that bank assets total $135,137,000. (B–6.2). Assets of the three established savings and loans total $85,007,000. (B–8.3).

Furthermore, there were many other bases, albeit not undisputed, for the Board's finding that there is a need for the proposed branch. Evidence indicates an excellent pattern of population growth in the past and projected for the future. (B–5.4 and B–5.5). From 1960 the rate of personal disposable income has increased 247%. (B–5.10). There were 713 housing starts in Conway in a three year period. The average annual growth rate of total payrolls in Faulkner County was 20.2% (B–2.2). Retail sales in 1972 were $54,789,000; in 1979 they were $113,220,000. (B–4.2). Clearly there is support for the applicant's claim that economic growth is occurring so as to warrant more institutions. Additionally, the applicant points out that the $52 million in savings and loan institutions now available in Faulkner County is inadequate in view of these statistics. Finally, certain services have not been offered in Faulkner County by the existing institutions. Although there was evidence to the contrary, the Court cannot say that the FHLBB was arbitrary and capricious in finding a need for this branch.

---

**2.** These contentions concern possible violation of 12 U.S.C. § 1464(a), improper allocation of the burden of proof, and the impropriety of approving a federal savings and loan branch where there already is a state savings and loan.

Judge Williams considered these same claims to be without merit. *First Federal Savings & Loan Ass'n of Fayetteville v. FHLBB*, 426 F.Supp. 454 (W.D.Ark.1977).

**2.**

There is little real dispute about the Board's finding of the probability of the branch's success. Projected revenues and expenses indicate an expected profit by the fourth year of operation. (B–10.4). Growth of $2 million in savings during the first year is projected and not disputed. (B–8.4).

**3.**

While there was protest about the level of revenue extended to home loan applicants by First Federal in both Pulaski and Faulkner counties, the applicant submitted evidence of community involvement and of a broad range of available services which was not disputed. (D–1.7, 1.13–18). The Board has thus considered relevant factors and clear error has not been shown.

**4.**

Whether the grant of the application to open an additional branch in Conway will visit "undue injury" on other existing institutions is a much closer and more difficult question. However, under the applicable law, it is not for this court to substitute its own judgment; rather it must look only to see whether there is a rational connection between the facts found and the choice made by the agency. *See First National Bank v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). As was pointed out in *Madison County Building & Loan Ass'n., supra* at 397–398, few businesses welcome competition. The relevant question is whether the added competition will result in undue harm to existing local institutions.

There were two primary challenges to the Board's finding that to allow First Federal to branch in Faulkner County would not result in undue injury. First is the threat to Central Arkansas Savings and Loan. Central Arkansas was established only two years ago and has yet to return a profit consistently, handicapped by monetary conditions in establishing a firm base. While Security Savings is no giant and would suf-

fer a slowdown in growth, it is claimed that Central Arkansas would not be able to survive the addition of a First Federal branch in the Conway area. Particularly it is feared that First Federal's huge advertising budget would cost Central Arkansas much business or force it to advertise beyond its means, either of which would result in undue harm to Central Arkansas Savings and Loan. According to this view, there will not be an increase in savings but a fragmentation of the market if First Federal enters the market.

A second basis for protest is the "current crisis period of inadequate funds," as explained, for example, in the protest of First National Bank of Conway, Arkansas, dated September 5, 1979. First Federal pointed out at the hearing that economic conditions change, and although the recent past has been a difficult period, such a consideration should not be determinative. The record[3] shows that Central Arkansas captured $14 million in new savings in the first months of 1979 during that "crisis." It now has $7 million in assets with $5 million in savings. Security has increased its assets, too, in spite of economic conditions. At the hearing First Federal officials explained their belief that a new competing branch would enable the present institutions to realign their assets more advantageously to their long-term benefit, not harm. Population per savings institution would equal 8,449.1. First Federal stated that institutional advertising would have some spill-over benefit to the other associations and that the loyalty of residents to purely local institutions would temper any potential decrease in Security's and Central Arkansas's business. (Tr. 66, 67, 278, 279, 282, 284). In short, on balance the record provides at least a rational basis for the conclusion reached by the Board.

An examination of the Bank Board's findings reflects that said findings indicate awareness of the proper statutory and regulatory standards and that the Board was justified on the basis of the record in ruling that these standards had been met. Thus

**3.** *See generally,* Record 282–83.

the action of the FHLBB was not an unlawful, arbitrary, or capricious abuse of discretion. This Court cannot, given this conclusion, set aside the agency's decision approving First Federal Savings and Loan Association's application for permission to establish a full service branch office in Conway, Arkansas.

It is therefore Ordered that the defendants' motion for summary judgment be, and it is hereby, granted and the cause of action herein is dismissed.