**BRIDGEPORT FEDERAL SAVINGS
AND LOAN ASSOCIATION**

v.

**FEDERAL HOME LOAN BANK BOARD**
and
Quaker City Federal Savings and Loan
Association.

**Civ. A. No. 29414.**

United States District Court
E. D. Pennsylvania.

Nov. 14, 1961.

Duffy, McTighe & McElhone, Desmond J. McTighe, Lawrence A. Brown, Philip D. Weiss, Norristown, Pa., for plaintiff.

Walter E. Alessandroni, U. S. Atty., Eastern Dist. of Pennsylvania, Philadelphia, Pa., Ray E. Dougherty, Albion W. Fenderson, Attys., Thomas H. Creighton, Jr., Gen. Counsel, Federal Home Loan Bank Board, Washington, D. C., for Federal Home Loan Bank Board.

Charles J. Biddle, Patrick T. Ryan, Philadelphia, Pa., for Quaker City Federal Savings & Loan Ass'n. Raymond K. Denworth, Drinker, Biddle & Reath, Philadelphia, Pa., of counsel.

KRAFT, District Judge.

This is an action by Bridgeport Federal Savings and Loan Association ("Bridgeport") for declaratory and injunctive relief against the Federal Home Loan Bank Board ("Board") and Quaker City Federal Savings and Loan Association ("Quaker City"), following the Board's approval of Quaker City's application to establish a branch office. The case is before us on defendants' motions to dismiss.

The averments of the complaint may be briefly summarized. Bridgeport maintains its principal office and place of busi-

ness at Bridgeport, Pa. Quaker City's principal office and place of business is in Philadelphia. On February 4, 1959, Quaker City filed an application with the Board to establish a branch office at King of Prussia, Montgomery County, Pa. After due notice, hearings on the said application were held before a Hearing Officer, and evidence was submitted by Quaker City and by three protestants, including Bridgeport. Counsel thereafter submitted briefs, and, on March 7, 1961, the Board rendered its decision approving the application.

Bridgeport contends that in the conduct of the hearings the Board failed to comply with the requirements of the Administrative Procedure Act ("APA") in several particulars. It complains, inter alia, of the Board's refusal to issue subpoenas duces tecum at Bridgeport's request; of the Board's refusal to make available at the hearing the correspondence, reports and economic surveys which the Board considered in reaching its decision; of the Board's failure "to make Findings and Conclusions, as well as the reasons or basis therefor upon all the material issues of fact, law or discretion presented on the record." Bridgeport further contends that the Board erred in its conclusions of law and order, and that the Board's decision is subject to judicial review under Sec. 10 of APA, 5 U.S.C.A. § 1009.

Defendants' motions to dismiss assert that the Court lacks jurisdiction over the subject matter; that Bridgeport is without standing to complain of the Board's action; that the complaint fails to state a claim upon which relief can be granted.

■■ We are not persuaded that the APA is applicable here either in respect to the Board's procedure or to the right to judicial review. Sec. 5 of that Act, 5 U.S.C.A. § 1004, requires that "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing" (except in six listed circumstances not here applicable), an agency shall observe certain procedures specified in subsequent sections of the Act.

Under Sec. 5(a) of the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S. C.A. § 1464(a), "the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation" of Federal savings and loan associations, "and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States." While HOLA does not give explicit authority to the Board to permit branch offices for associations set up under its guidance, there is language in the statute which seems to recognize such authority. At any rate, it has several times been held that a Federal savings and loan association can have a branch office. See, e. g., North Arlington Nat. Bank v. Kearny Federal Savings & Loan Ass'n, 187 F.2d 564 (3rd Cir. 1951). Regulations adopted by the Board provide for the establishment of branch offices. 12 C.F.R. 545.14.

HOLA contains no specific requirement for an agency hearing even in the case of an application for an original charter. However, it has been assumed that a hearing is required in that instance. First National Bank of McKeesport v. First Federal Sav. & Loan Ass'n, 96 U.S. App.D.C. 194, 225 F.2d 33, 36 (D.C.Cir. 1955). The only reference in the Regulations to a hearing on a branch office application is found in 12 C.F.R. 542.2. What is of vital importance here, however, is that neither HOLA, as amended, nor the regulations thereunder, contain any provision that an application for a branch office must be "determined on the record after opportunity for an agency hearing."

Bridgeport points to Sec. 5(e) of HOLA, 12 U.S.C.A. § 1464(e) which provides:

"No charter shall be granted except to persons of good character and responsibility, nor unless in the judgment of the Board a necessity exists for such an institution in the community to be served, nor unless there is a reasonable probability of

its usefulness and success, *nor unless the same can be established without undue injury to properly conducted existing local thrift and home-financing institutions.*" (Emphasis added.)

Bridgeport recognizes that this provision applies to charters and makes no reference to branches, but contends that the same considerations are relevant in both cases. In our view of the case, the point is immaterial. Bridgeport places particular emphasis on the italicized portion, and argues that this confers upon existing institutions such as Bridgeport statutory protection from economic injury caused by competition of other Federal savings and loan associations. This protection, the argument runs, is a property right, and it follows that the requirements of due process necessitate an APA hearing before Bridgeport can be deprived of that property right. Reliance is placed on that line of cases beginning with Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950). In Wong, the Supreme Court gave definitive interpretation to Sec. 5 of APA (p. 50, 70 S.Ct. at page 454):

"We think that the limitation to hearings 'required by statute' in § 5 of the Administrative Procedure Act exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion. We do not think the limiting words render the Administrative Procedure Act inapplicable to hearings, the requirement for which has been read into a statute by the Court in order to save the statute from invalidity. They exempt hearings of less than statutory authority, not those of more than statutory authority. We would hardly attribute to Congress a purpose to be less scrupulous about the fairness of a hear-

ing necessitated by the Constitution than one granted by it as a matter of expediency."

While we have been impressed by Bridgeport's able and ingenious argument, we are unable to agree with its conclusion. Bridgeport has no common law right to be free from competition;[1] nor, in our opinion, does the language relied upon confer such a right. We think the considerations mentioned in 1464(e) are mere criteria or standards to guide the Board in its decision on an application for a charter. The criterion, in relevant regard, is that no charter shall be granted unless *in the judgment of the Board* an institution "can be established without undue injury to properly conducted existing local thrift and home-financing institutions." Having in mind the magnitude of the public interest affected, it seems clear that the standards prescribed in 1464(e) far transcend the interests of any particular institution. In speaking of this very provision, in Federal Home Loan Bank Board v. Rowe, 109 U.S.App.D.C. 140, 284 F.2d 274, 275, (D.C.Cir.1960), the Court well said:

"No statutory provision whatever was made for hearings through the medium of which the prescribed criteria were to be established. On the contrary, Congress clearly reposed in the Board a wide discretion in its determination of whether or not the standards had been met. The Board was charged with a high responsibility, and was commensurately bound to exercise its best judgment, necessarily flexible in the banking and monetary field, in order 'to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes * * *.' The Board was not required to issue a charter; it might issue within a given area more than one. It might limit the issuance to a single association. Congress knew very well

1. Tennessee Electric Power Co. v. T. V. A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939).

that conditions in an agricultural area might differ from those in an urban field or a mining community. A delicate balance of the Board's judgment clearly was required in determining the likelihood of successful operations, not only for the welfare of shareholders in the association but with regard to the possible impairment of confidence in and the stability of other thrift institutions. The Government itself had a continuing interest in each such association as might qualify for a charter. In particulars here pertinent, from 1933 to the present time, Congress has never amended the basic act."

Since HOLA makes no provision whatever for a hearing, and, since, in our view, the requirements of due process do not necessitate an APA type of hearing, we think Bridgeport has no legal ground to complain of the procedure before the Board.

The Board, after due consideration, determined that:

" * * * a necessity exists for a branch office at, or in the immediate vicinity of 149 South Gulph Road, King of Prussia, Upper Merion Township, Montgomery County, Pennsylvania, there is a reasonable probability of its usefulness and success, and said branch office can be established at such locality without undue injury to properly conducted existing local thrift and home-financing institutions."

HOLA makes no provision for judicial review of an order of the Board approving or denying an application for an original charter. (The Act, as noted heretofore, does not expressly provide for branches). As remarked in the Rowe case, supra, "This omission was no inadvertence, indeed Congress fully intended that the Board possess vast discretion before 'the Board approves the application.'" Congress *did* provide for judicial review of proceedings under 12 U.S.C.A. § 1464(d) (1) to enforce compliance with laws and regulations. We do not agree with Bridgeport's contention that the last sentence of this same subsection confers a right to judicial review of the instant proceeding.

Sec. 10 of APA, 5 U.S.C.A. § 1009, provides in relevant part:

"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.

"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof."

We think authority to permit establishment of a branch is clearly committed to agency discretion. It is unnecessary to enlarge upon the place of banking in our increasingly complex and interdependent society. While savings and loan associations do not engage in a general banking business, they do perform a vital function in the local communities. The question of the necessity or justification for an expansion of banking and credit facilities in a community, is one which calls for highly specialized knowledge, and sensitive, almost intuitive, judgment. It is a reasonable assumption that in such matters Congress intended to repose ultimate authority in those duly qualified by education, training and experience. The observation of Mr. Justice Rutledge, concurring, in Board of Governors of Federal Reserve System v. Agnew, 329 U.S. 441, 450, 67 S.Ct. 411, 415, 91 L.Ed. 408 (1947), is appropriate in present context:

"Not only because Congress has committed the system's operation to their hands, but also because the system itself is a highly specialized and technical one, requiring expert and coordinated management in all its phases, I think their judgment should be conclusive upon any matter which, like this one, is open to reasonable difference of opinion. Their specialized experience gives

them an advantage judges cannot possibly have, not only in dealing with the problems raised for their discretion by the system's working, but also in ascertaining the meaning Congress had in mind in prescribing the standards by which they should administer it. Accordingly their judgment in such matters should be overturned only when there is no reasonable basis to sustain it or where they exercise it in a manner which clearly exceeds their statutory authority."

We have read the many cases cited in Bridgeport's able and comprehensive brief. Some of these cases may appear to support Bridgeport's position, but we do not regard them as controlling authority. The rulings in this area of the law are perhaps difficult to harmonize.

First National Bank of McKeesport v. First Federal Sav. & Loan Ass'n, 96 U.S. App.D.C. 194, 225 F.2d 33 (D.C.Cir. 1955), relied on by defendants, is directly in point. That case involved actions by several financial institutions for declaratory and injunctive relief against the Board and two Federal savings and loan associations, following the Board's approval of applications to establish branch offices. The Court held that the adjudication and procedural provisions of APA were inoperative in the case of an application for a branch office (225 F.2d p. 36):

> "While neither Section 5(e) nor any other section of the act specifically requires an agency hearing in granting an original charter, we may assume for the purposes of these cases that such a hearing is required in that instance. Even so, the same formalities are not required in the consideration of an application for a branch. Section 5(e) quoted above refers simply to 'charters,' and governs the Board's consideration of an application for the grant of a charter to establish an 'institution.' A branch, however, is not an 'institution' and does not require a charter,

its establishment being of an entirely different character.

> "Section 5 of the Administrative Procedure Act, 5 U.S.C.A. § 1004, requires that '(i)n every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing' (except in six listed circumstances not here applicable), an agency shall observe certain procedures specified in subsequent sections of that act. Neither the Home Owners' Loan Act of 1933, as amended, nor the regulations thereunder, contains any provision that an application for a branch must be 'determined on the record after opportunity for an agency hearing.'

> "Appellants urge that Section 5(e) of the Home Owners' Loan Act gives them protection from 'undue injury' in the establishment of a branch, and contend that, even though that act does not specifically provide for a determination on the record, they are entitled, as a matter of constitutional due process, to the adjudication and procedural provisions of the Administrative Procedure Act, citing in support Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; Riss & Co. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345; Cates v. Haderlein, 342 U.S. 804, 72 S.Ct. 47, 96 L.Ed. 609; United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54. None of these cases has application here. We think it clear that, even if it be assumed that Section 5(e) requires an agency hearing on the original grant, there is no such requirement on an application for the establishment of a branch."

The Court further held that the Board's action was not subject to judicial review (225 F.2d p. 36):

> "What we have said disposes of these cases and we, therefore, are not bound to consider the question of appellants' standing. We merely

call attention to the fact that, since authority to permit establishment of a branch is clearly committed to agency discretion, the matter is disposed of automatically by Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009."

We conclude, therefore, that the complaint fails to state a claim upon which relief can be granted.

### Order

Now, November 14th, 1961, it is ordered and decreed that defendants' motions to dismiss be, and they are, granted, and the complaint is dismissed.