**WEST HELENA SAVINGS & LOAN ASSOCIATION, Appellee,**

v.

**FEDERAL HOME LOAN BANK BOARD and Federal Savings and Loan Insurance Corporation, Appellants.**

**WOODRUFF COUNTY SAVINGS & LOAN ASSOCIATION, Appellee,**

v.

**FEDERAL HOME LOAN BANK BOARD and Federal Savings and Loan Insurance Corporation, Appellants.**

**Nos. 76–1562, 76–1563.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1976.

Decided April 28, 1977.

Roland Marcotte, Jr., Washington, D. C., for appellants; Daniel J. Goldberg, Acting Gen. Counsel, Harold B. Shore, Associate Gen. Counsel, Harvey Simon, Senior Trial Atty., Washington, D. C., on brief.

Hermann Ivester, Little Rock, Ark., for appellees; Eugene L. Schieffler, West Helena, Ark., for West Helena Savings & Loan Assn., Herman Ivester, Little Rock, Ark., for West Helena Savings & Loan Assn. and Woodruff County Savings & Loan Assn., on brief.

Lynne D. Finney, Washington, D. C., for amicus curiae; National Assn. of State Savings and Loan Supervisors, on brief.

Bradley D. Jesson and Robert T. Dawson, Fort Smith, Ark., on brief for amicus curiae Arkansas Savings and Loan League.

Jim Guy Tucker, Atty. Gen., State of Ark., and Lonnie A. Powers, Deputy Atty. Gen., Little Rock, Ark., on brief for amicus curiae State of Arkansas.

Sellers & Sellers, Sapulpa, Okl., on brief for amicus curiae Grady County Savings & Loan Assn.

Brooks McLemore, Jr., Atty. Gen., State of Tennessee, and C. Hayes Cooney, Chief Deputy Atty. Gen., Nashville, Tenn., on brief for amicus curiae State of Tennessee.

Before WEBSTER and HENLEY, Circuit Judges, and VAN PELT,* Senior District Judge.

HENLEY, Circuit Judge.

These are appeals by the Federal Home Loan Bank Board (Board) and the Federal Savings and Loan Insurance Corporation (Corporation) from a joint judgment of the United States District Court for the Eastern District of Arkansas[1] which ordered appellants to grant deposit insurance to the plaintiffs, West Helena Savings & Loan Association (West Helena) and Woodruff County Savings & Loan Association (Woodruff) as authorized by 12 U.S.C. § 1726(a).

Prior to applying for insurance the respective plaintiffs had received charters from the Arkansas Savings and Loan Association Board established by Arkansas Act 227 of 1963 as amended by Act 292 of 1973, Ark.Stat.Ann. §§ 67–1801 *et seq.* West Helena was authorized to operate in the City of West Helena in Phillips County, and Woodruff was authorized to operate in the small City of Augusta which is the county seat of Woodruff County.

The charters were issued after notice and hearing and were based upon findings by the Arkansas Board that there was a need for the services proposed to be offered, that the volume of business in the areas proposed to be served was such as to indicate a successful operation, and that the proposed operations would not unduly harm any other existing state or federal savings and loan association or other financial institution.

---

* The Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

1. The Honorable Oren Harris, Senior United States District Judge.

Such findings were required by Ark.Stat. Ann. § 67–1824.

Although plaintiffs received their state charters, they were not entitled to operate thereunder unless and until they obtained deposit insurance from the defendant Corporation. Ark.Stat.Ann. § 67–1831.[2]

West Helena received its state charter substantially prior to the time at which Woodruff was chartered. Pursuant to regulations which appear in 12 C.F.R. § 562 (1976), West Helena applied to the Corporation for insurance on December 21, 1972. The application was opposed by two federal savings and loan associations operating in Helena, Arkansas, which adjoins West Helena, and which is a substantially larger city than West Helena. The application was denied on October 31, 1973, and reconsideration was denied on March 11, 1974.

Woodruff filed its application on June 25, 1974; the application was denied on December 31, 1974, and reconsideration was denied on July 1, 1975.

Although the Board and the Corporation are separate and distinct governmental entities, the Corporation is subject to the control of the Board, and the decisions denying plaintiffs' applications were actually made by the Board. Both denials were based on findings that there was no economic need for the services proposed to be offered by the respective plaintiffs. Those findings were directly contrary to those that had been made by the Arkansas Board.

As a result of the denials of their applications, plaintiffs have not been able to commence business. For present purposes we will assume that their state charters are still viable, and that they could commence operations immediately if they could obtain the necessary federal insurance.

West Helena filed its suit in 1974, and Woodruff commenced its action in 1975. Both plaintiffs, which are represented by the same counsel, sought judicial review of the administrative denials of their insurance applications, and both sought declaratory and injunctive relief. Subject matter jurisdiction was based on the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.,* and on 12 U.S.C. § 1730(k)(1), and on 28 U.S.C. §§ 1331(a), 1337 and 1361.[3]

The defendants answered and denied that plaintiffs are entitled to any relief.

Thereafter the respective plaintiffs filed motions for summary judgment taking the position that under a proper construction of 12 U.S.C. §§ 1725(a) and 1726(a) and (c) the Board had no power to reject the applications of the plaintiffs on the basis of lack of economic need for the proposed services. The defendants vigorously opposed the motions.

Although the two cases were not consolidated by the district court, the motions were briefed and argued together on March 30, 1976. On June 28, 1976 the district court filed a Memorandum Opinion discussing the problem before it in great detail· and granting the motions. On the same day the district court entered a joint judgment pursuant to the Memorandum Opinion. The judgment recites that the court had jurisdiction of the cases, that insurance had been denied the plaintiffs on an impermissible ground, and that plaintiffs were entitled to relief. The judgment commanded the defendants to grant the desired insurance. These appeals followed and they present an identical question of statutory construction.

Both the Board and the Corporation are agencies of the United States. The Board was created by the Federal Home Loan

---

**2.** In litigation closely related to these cases § 67–1831 was held to be constitutional by the Supreme Court of Arkansas in *Arkansas Savings & Loan Ass'n Board v. West Helena Savings & Loan Ass'n,* 538 S.W.2d 560 (Ark.1976).

**3.** Plaintiffs also referred to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.,* as a jurisdictional basis. It ought to be unnecessary

to say at this late date that the Declaratory Judgment Act is not a jurisdictional statute, and does not confer any jurisdiction on the federal courts; it simply authorizes the grant of declaratory relief in proper cases with respect to which federal jurisdiction is otherwise established.

Bank Act of 1932, 12 U.S.C. §§ 1421 *et seq.* Its functions include the chartering of federal savings and loan associations, and the supervision and regulations of such associations. Another of its functions is to manage and direct the Corporation which was established by Title IV of the National Housing Act of 1934, 12 U.S.C. §§ 1724 *et seq.*

The purpose of the Corporation is to provide insurance for savings deposits in institutions that are eligible for the insurance that the Corporation provides. 12 U.S.C. § 1725(a).

Section 1726(a) provides that the Corporation shall insure the deposits in federal savings and loan associations, and that it "may" insure the deposits in certain other types of institutions including state chartered savings and loan associations.

Section 1726(c) sets up certain criteria for the rejection of applications for insurance. An application must be rejected if the Corporation, that is to say the Board, finds that the capital of the applicant is impaired or that its financial policies or management is unsafe. An application "may" be rejected if it is found that the character or management of the applicant or its home financing policy is inconsistent with economical home financing or with the purpose of the statute. The subsection states: "In considering applications for such insurance the Corporation shall give full consideration to all factors in connection with the financial condition of applicants and insured institutions, and shall have power to make such adjustments in their financial statements as the Corporation finds to be necessary."

The applications of the plaintiffs were not rejected on the basis of the criteria specifically set out in § 1726(c) but rather on the basis of agency findings that there was no public or community need for the proposed services and that to grant the insurance would create unacceptable insurance risks for the Corporation.

The position of the Board was, and is, that is has a broad discretion in passing on an application for insurance filed by a state chartered institution, and that it is not limited in the exercise of its discretion to a consideration of the specific criteria mentioned in § 1726(c) and may take into consideration "all factors" that are relevant including any lack of economic need for the services that the applicant would offer to the saving and borrowing public.

The Board evidently takes the view that if there is no need for the services to be provided by a state chartered institution, that institution is not likely to succeed, and that its failure, if it occurs, will or may imperil its deposits which would be covered by the Corporation's insurance if the application for the insurance should be granted. Going a step further, the Board is also evidently of the opinion that if existing services in a given area are needlessly duplicated, the duplication may result in the failure of both institutions with a loss to the deposits of both which would have to be covered by the Corporation if the deposits in both institutions were covered by insurance granted by the Corporation.

Thus, in evaluating an application for insurance submitted by a state chartered institution the Board takes the same approach that it is required to take when passing on an application for a charter for a new federal savings and loan association or upon an application by an existing federal institution for authority to establish a branch facility. Such applications are not to be granted unless the Board finds that there is a need for the proposed service, that the operation will probably be successful, and that it will not inflict undue injury on a properly managed existing institution with which the new institution or the branch to be established will compete. *See* 12 C.F.R. § 543.2(b) (1976) and 12 C.F.R. § 545.14(c) (1976). *See also Bank of Ozark v. Federal Home Loan Bank Board*, 402 F.Supp. 162 (E.D.Ark.1975), and *Benton Savings & Loan Ass'n v. Federal Home Loan Bank Board*, 365 F.Supp. 1103 (E.D. Ark.1973).

Although the authority claimed by the Board is not spelled out in 12 C.F.R. §§ 562.1 *et seq.* (1976), which relate to applications for insurance submitted by state

chartered institutions, the Board's assertion of the authority in question is not new, and it has been exercised from time to time since as early as 1955.

■ The validity of the position taken by the Board has not been challenged heretofore in the courts, and the question presented to the district court and to this court is one of first impression.[4] The question is whether the Board has the power under § 1726(c) to reject an application for insurance submitted by a state chartered institution on the basis of lack of economic need for the services proposed to be offered by the applicant in a particular locality or area.[5]

We have given careful consideration to the long and elaborate opinion of the district court and to the excellent briefs that have been filed with us. The opinion and the briefs exhaustively discuss underlying legal principles, relevant statutory provisions and pertinent legislative history, and cite numerous cases deemed to be instructive.

The path of reasoning followed by the able and experienced district judge may be summarized as follows: The chartering of savings and loan associations is one thing, and the granting or withholding of federal insurance sought by a chartered institution is something else. The chartering function with respect to federal savings and loan associations has been vested in the board, but that function with respect to other associations has been left to state regulatory agencies. And, the board cannot in effect override the chartering power of a state agency by using the board's power over the Corporation to refuse federal deposit insurance to a state chartered institution because the board differs with the state agency on a question which that agency resolved in the discharge of its chartering function.

To put it slightly differently, the district court was of the opinion that where a state chartered institution is concerned, such questions as need for the proposed service, likelihood of success of the operation and possible undue injury to existing competitors are left to the judgment of the state agency, and that the board has no power to second-guess the state agency on those questions when passing upon a later application for federal insurance by an institution to which the state agency has seen fit to grant operating authority.

We consider the question presented within the frame of reference created by the Arkansas statutory scheme for the creation, regulation and supervision of savings and loan associations. That scheme includes the requirement, already mentioned, that a state created association may not commence operations until it obtains insurance from the Corporation, and the scheme also provides that a charter can be forfeited unless operations commence within a limited period of time, although the time limit may be extended successively upon a showing of good cause.[6]

---

**4.** The question is of manifest importance in the savings and loan industry, and this litigation has attracted considerable attention. In addition to the briefs submitted by the immediate parties, we have been favored with amicus curiae briefs submitted by the States of Arkansas and Tennessee, the National Association of State Savings & Loan Supervisors, and by the Grady County Savings & Loan Association of Chickasha, Oklahoma. Those amici urge that the judgment of the district court be affirmed. On the other hand, the Arkansas Savings & Loan League has submitted an amicus brief in which it is contended that the judgment of the district court should be reversed.

**5.** That was the only issue raised by plaintiffs' motions for summary judgment and submitted to the district court on those motions. The

district court was not called upon to determine nor are we called upon to determine whether if the power claimed by the Board exists, it was improperly exercised or abused with respect to either plaintiff. And no such determination could properly have been made on the record before the district court.

**6.** Ark.Stat.Ann. § 67–1826, as amended by Act 531 of 1975. Prior to the passage of the amendatory statute, the initial period within which operations had to be commenced was six months, and that period could be extended for a year. After the effective date of Act 531 the periods are, respectively, one year and two years. In *Arkansas Savings & Loan Ass'n Board v. West Helena Savings & Loan Ass'n,* supra note 2, a majority of the Arkansas Supreme Court held that for good cause shown

We find ourselves in agreement with the result reached by the district court although we do not necessarily subscribe to everything that was said in the opinion of that court.

Federally chartered savings and loan associations first came into existence with the passage of the Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461 *et seq.,* and federal insurance with respect to deposits in savings and loan and similar associations was provided by Title IV of the National Housing Act of 1934, 12 U.S.C. §§ 1724 *et seq.*

Taken together, those two statutes created and contemplate the continued existence of a dual system of savings and loan associations with some associations being chartered by the Board and with others being chartered by state regulatory agencies. And although it was not required to do so, Congress provided that state chartered institutions should be eligible for federal deposit insurance, subject to the rejection criteria appearing in 12 U.S.C. § 1726(c).

Given such a system, at least as it operates in a state like Arkansas which requires a state chartered association to obtain federal deposit insurance before commencing business and which requires that business be commenced within a limited period of time, it seems unlikely that Congress intended for the Board in evaluating an initial application tendered by such an association after obtaining its charter to re-examine the underlying question of economic need for the proposed service and related questions which bear directly upon the propriety of the chartering of the association in the first instance.[7]

Such a re-examination would involve both a needless duplication of administra-

tive effort and the possibility of needless friction between the Board and the state agencies. Further, the exercise of such reviewing authority by the Board might tend to frustrate the initial actions of the state agencies and might lead states like Arkansas to abandon the requirement that state chartered savings and loan associations obtain federal deposit insurance, a requirement that most people would consider to be a salutary one.

It is true that a state agency can improvidently charter an association that is a poor insurance risk, but the Board can do exactly the same thing. Certainly, it is not to be presumed that a state agency is inherently less competent than the Board to assess in the first instance local needs and other relevant factors when passing upon an application for a savings and loan charter.

It does not follow from our agreement with the holding of the district court or from what has been said by us to this point that the Corporation is required to insure the deposits in every association that is able to obtain a state charter. As has been seen, the Board must reject some applications for insurance and it may reject others on the basis of inconsistencies between management characteristics or home financing policies and economical home financing or the underlying policy of the federal statute. Moreover, a grant of deposit insurance by the Corporation is not irrevocable, and the Corporation has rather drastic remedies available to it whereby it can in substantial measure protect itself from loss. *See* 12 U.S.C. § 1730.

Granting that the Board has some discretion in passing upon applications for insurance tendered by state chartered institu-

successive extensions of the initial time period can be granted by the state agency, and that a failure of an association to commence business solely because it had not been able to obtain federal insurance is good cause for an extension of time, and that where such cause is shown, it is error for the agency to refuse an extension.

**7.** As indicated, the Board in passing upon an original application for a federal savings and loan association charter is required to consider,

among other things, community need for the proposed service. 12 U.S.C. § 1464(e). And in passing upon an application of a bank for insurance of its deposits the Federal Deposit Insurance Corporation is required to consider a number of factors including "the convenience and needs of the community to be served by the bank." 12 U.S.C. § 1816. No corresponding requirement appears in 12 U.S.C. § 1726 or in other sections dealing with the Board and the Corporation.

tions, we do not think that in present context the discretion of the Board extended so far as to permit it to reject plaintiffs' applications on the basis of lack of need for their services. We think that the Board in evaluating those applications was required to proceed initially on the premise that the findings of the Arkansas Board that economic need for the proposed services existed were correct.

 Defendants contend, alternatively, that even if the district court was correct in sustaining plaintiffs' motions for summary judgment, it should have done no more than remand the cases to the Board for further consideration in the light of the rejection criteria specifically mentioned in § 1726(c), and that it erred when it directed that the plaintiffs' applications for insurance be granted.

Apart from the fact that the contention seems not to have been advanced in the district court, we see no merit in it. These controversies have been before the agencies involved and before the courts for a substantial number of years during which time plaintiffs have not been able to exercise the operating authority that the state has conferred upon them. It was not suggested to the district court and it has not been suggested to us that the capital of either plaintiff is insufficient or impaired, or that its management or contemplated management is or will be unsafe, or that the character of its management or its financing policy is or will be inconsistent with sound home financing or with the purpose of the National Housing Act. In such circumstances, we see no error in the action of the district court in ordering that the applications be granted.

The judgment of the district court is affirmed with respect to both plaintiffs.