570 F.2d 693
 FAYETTEVILLE SAVINGS & LOAN ASSOCIATION, FAYETTEVILLE,
ARKANSAS, Appellant,
v.
FEDERAL HOME LOAN BANK BOARD, Garth Marston, Grady Perry and
Superior Federal Savings & Loan Association, Fort
Smith, Arkansas, Appellees.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF FAYETTEVILLE,
ARKANSAS, Washington Federal Savings & Loan Association,
Springdale, Arkansas and Benton County Savings & Loan
Association, Bentonville, Arkansas, Appellants,
v.
FEDERAL HOME LOAN BANK BOARD, Garth Marston, Grady Perry and
Superior Federal Savings & Loan Association, Fort
Smith, Arkansas, Appellees.
 Nos. 77-1475 and 77-1494.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 18, 1977.
Decided Jan. 25, 1978.
 
 Hermann Ivester, (on rebuttal and filed appendix and briefs) Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., argued for appellant.
 Bradley D. Jesson, (filed brief) of Hardin, Jesson & Dawson, Fort Smith, Ark., argued for appellee, Superior Federal Sav. & Loan Assn.
 Harvey Simon, Sr., Trial Atty., Washington, D. C., argued; Simon, Daniel J. Goldberg, Acting General Counsel, Harold B. Shore, Associate General Counsel and John E. Gunther, Atty., Washington D. C., filed brief for appellee, Federal Home Loan Bank Bd.
 Before WEBSTER and HENLEY, Circuit Judges, and SMITH, Senior District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 This is an action brought in the United States District Court for the Western District of Arkansas by seven savings and loan associations located in Benton and Washington Counties in extreme Northwest Arkansas against the Federal Home Loan Bank Board, the individuals who were members of the Board at the time of the filing of the suit, and Superior Federal Savings & Loan Association of Fort Smith, Sebastian County, Arkansas.[1]
 
 
 2
 The purpose of the suit is to nullify a resolution of the Board adopted in September, 1976 which granted to Superior the authority to open a branch office adjacent to an established shopping center in the City of Fayetteville, which is the county seat of Washington County, and which is some sixty miles north of Fort Smith.
 
 
 3
 Plaintiffs' complaint in the district court alleged that in the administrative proceedings leading up to the granting of Superior's application for branching authority plaintiffs had been denied due process of law; that the Board acted unlawfully, arbitrarily and capriciously in granting the application, and that the action of the Board lacked adequate evidentiary support. Plaintiffs sought both preliminary and permanent injunctive relief.
 
 
 4
 The case was assigned to the docket of Chief District Judge Paul X Williams who conducted a hearing in connection with plaintiffs' application for a preliminary injunction. In the course of the hearing it was agreed that plaintiffs would not insist on their prayer for a preliminary injunction; that Superior would not seek to establish or operate its proposed branch office prior to determination of the controversy between the parties, provided that the case was disposed of as expeditiously as possible; and that the case would be submitted to the district court on cross motions for summary judgment, the administrative record made before the Board in connection with Superior's application, briefs and oral arguments.
 
 
 5
 The cross motions for summary judgment were duly filed and briefed, and the case was set down for oral argument on January 7, 1977 and was argued on that day. Shortly before the argument one of the plaintiffs, Fayetteville Savings & Loan Association, employed special counsel who filed a motion seeking leave to amend the complaint so as to raise issues not raised by the original complaint and not covered by the briefs that had been filed in connection with the cross motions for summary judgment. While the Board objected to the amendment, it was allowed, and the other plaintiffs were permitted to join in it.
 
 
 6
 In February, 1977 Judge Williams filed an opinion in which he dealt with all of the issues before him, including those raised by the amendment to the complaint. He found that the motion of the defendants should be granted, that the motion of plaintiffs should be denied, and that the complaint, as amended, should be dismissed.
 
 
 7
 After the filing of that opinion plaintiffs filed a motion praying that the holding be limited to the issues raised by the original complaint and covered by the briefs of the parties, and that further consideration be given to the new issues raised by the amendment. That motion was denied in a supplemental opinion filed by the district court.
 
 
 8
 Both the original and supplemental opinions are published as First Federal Savings & Loan Ass'n v. Federal Home Loan Bank Board, 426 F.Supp. 454 (W.D.Ark.1977). Final judgment having been entered, timely notices of appeal were filed by Fayetteville Savings & Loan Association, First Federal Savings & Loan Association, Washington Federal Savings & Loan Association and Benton County Savings & Loan Association. The other three plaintiffs did not see fit to appeal.[2]
 
 
 9
 Federal savings and loan associations were authorized by the Home Owners Loan Act of 1933, and the authority of the Board to charter such institutions is to be found in § 5(a) of that Act which is codified as 12 U.S.C. § 1464(a), and which is as follows:
 
 
 10
 (a) In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States.
 
 
 11
 As it has been written for the past several years, 12 U.S.C. § 1464(c) permits a federally chartered association to make loans secured by its own savings accounts or by first liens on residential real estate located within one hundred miles of the home office of the association or within the same state as that in which the home office is located.
 
 
 12
 Unlike the National Bank Act, as amended, which permits the Comptroller of the Currency to authorize national banks to establish branches subject to certain conditions and restrictions, the Home Owners Loan Act contains no provision which expressly authorizes the establishment of branch facilities by existing savings and loan associations. However, for many years the Board has successfully asserted the power to authorize associations to establish branches in conformity with regulations that the Board has promulgated and which appear in 12 C.F.R. § 545.14 (1976). See Central Savings & Loan Ass'n of Chariton, Ia. v. Federal Home Loan Bank Board, 422 F.2d 504 (8th Cir. 1970), aff'd. 293 F.Supp. 617 (S.D.Ia.1968); Bridgeport Federal Savings & Loan Ass'n v. Federal Home Loan Bank Board, 307 F.2d 580 (3d Cir. 1962), cert. denied, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963); First Nat'l Bank of McKeesport v. First Federal Savings & Loan Ass'n of Homestead, 96 U.S.App.D.C. 194, 225 F.2d 33 (1955); North Arlington Nat'l Bank v. Kearny Federal Savings & Loan Ass'n, 187 F.2d 564 (3d Cir.), cert. denied, 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617 (1951); Bank of Ozark v. Federal Home Loan Bank Board, 402 F.Supp. 162 (E.D.Ark.1975).
 
 
 13
 The Board's regulation, above cited, provides among other things that the Board may grant branching authority where there is a public need for the proposed service, where there is a reasonable probability that the branch to be established will succeed and be useful, and where the establishment of the branch will not unduly injure properly managed and existing thrift and home financing institutions in the area.[3] 12 C.F.R. § 545.14(c) (1976).
 
 
 14
 As to the geographical extent of its power to authorize the establishment of branches, the position of the Board is that it can in general authorize an existing association to establish a branch at any point within its authorized lending area as defined by 12 U.S.C. § 1464(c) (1976).[4]
 
 
 15
 Turning to the facts, Benton and Washington Counties are the two most northwesterly counties in Arkansas. Benton County is immediately north of Washington County and is bordered on the north by the State of Missouri. Both of the counties are bordered on the west by the State of Oklahoma. Bentonville is the county seat of Benton County, as Fayetteville is the county seat of Washington County. Springdale is immediately adjacent to Fayetteville on the north; Rogers is somewhat north of Springdale and somewhat south of Bentonville. Siloam Springs is located in the extreme western part of Benton County and is about twenty-five miles west of Springdale.
 
 
 16
 Benton and Washington Counties are traversed from north to south by U. S. Highway 71, and Bentonville, Rogers, Springdale and Fayetteville are all located along that highway. Those cities constitute or are close to constituting a single heavily populated urban area with much in common economically and commercially.
 
 
 17
 Fort Smith is the county seat of Sebastian County and is located in the Arkansas River Valley on the south bank of the river. It is a much larger city than any of the others involved in the case. Sebastian County is separated from Washington County by Crawford County which is a large and in parts mountainous county. As stated, Fort Smith is about sixty miles from Fayetteville and is still further from the other cities to which reference has been made.
 
 
 18
 In early May, 1976 Superior filed its application for authority to branch into Fayetteville. Notice of the filing of the application was duly published and was promptly protested by the existing savings and loan associations which were plaintiffs in the district court.
 
 
 19
 Both sides submitted relevant economic data to the Board's Supervisory Agent in Arkansas, and he heard oral arguments on July 29, 1976. There was no evidentiary hearing.
 
 
 20
 In due course the Supervisory Agent forwarded the documentary material, a transcript of the oral arguments, and his recommendations to the Board's staff. Staff studied those materials and prepared and submitted to the Board a report which included its own recommendations. The Board granted Superior's application on September 23, 1976 and this suit was filed in the district court in early October of that year.
 
 
 21
 The complaint attacked the action of the Board on a number of specific grounds that may be summarized as follows: That the proceedings before the Board did not comply with the requirements of due process of law; that in granting the application the Board acted arbitrarily and capriciously and abused it discretion; that the Board did not make adequate findings; that the Board failed to balance possible injury to the protestants against the interests of the people to be served by the proposed branch; that the establishment of the branch will unduly injure the plaintiffs; and that the Board ignored the recommendations of its own staff and of its own Supervisory Agent.
 
 
 22
 The new contentions of plaintiffs injected into the case by the amendment to the complaint were (1) that the Board had no statutory authority to authorize Superior to establish a branch in Fayetteville because the branch would not be subject to the control of local Fayetteville people and interests; (2) that the Board has no authority to authorize a federal savings and loan association to establish a branch in a locality already served by existing state chartered institutions; (3) that a regulation of the Board, 12 C.F.R. § 556.5(b)(5) (1976), which expresses a Board policy favorable to branching by federal institutions impermissibly shifts the burden of proof with respect to an application for branching authority from the proponent to the protestants; and (4) that the Board was required by 42 U.S.C. § 4332(c), which is part of the National Environmental Policy Act, to prepare an environmental impact statement with respect to the proposed operation, and that the Board failed to do so.
 
 
 23
 The district court found that all of the contentions set out in the original complaint and in the amendment thereto were without merit, and all of them were rejected. As stated, the district court also found that the post-opinion motion of the plaintiffs was without merit and denied it.
 
 
 24
 From our consideration of the record before us, the briefs and oral arguments, we are satisfied that the district court correctly disposed of the issues before it and did not err in denying the motion filed by plaintiffs after the district court's first memorandum opinion had been filed. Accordingly, we affirm the judgment of the district court in its entirety and do so largely on the basis of Judge Williams's thorough and well-reasoned opinion.
 
 
 25
 The district court found that in passing upon Superior's application, the Board acted pursuant to law and complied with the requirements of due process; that in granting the application the Board did not act without evidentiary support or arbitrarily or capriciously and did not abuse its discretion; and that the Board was not required to disclose the recommendations that it had received from its staff and Supervisory Agent and certain confidential financial material that it had received and considered.
 
 
 26
 We agree with the district judge. We think that he correctly perceived the governing principles of law and permissibly applied them to the facts of the case.
 
 
 27
 It appears to us that the principal contention of the plaintiffs here is that the district court erred in its handling of the new issues that were brought into the case by the amendment to the complaint, a pleading that was not tendered until shortly before the argument in the district court and which was not filed until after the case had been submitted on the cross motions for summary judgment. We reject this contention of the plaintiffs. We hold that the district court dealt with the new issues in a permissible procedural manner, and that the new issues were decided correctly.
 
 
 28
 Preliminarily, we note that the case has been briefed and argued here on behalf of the plaintiffs by the able attorney who was employed originally as special counsel for Fayetteville Savings & Loan. And counsel contends, first, that the district court committed error in refusing to hear arguments directed to the new issues in the case that have been outlined, and in deciding those issues on the merits without calling for any responsive pleading from the defendants. In the circumstances of this case there is no merit to that contention. In our opinion the plaintiffs fared procedurally in the district court as well as they had any right to expect.
 
 
 29
 All of the plaintiffs were represented initially both before the Board and in the district court by capable Northwest Arkansas counsel of plaintiffs' own choice. The issues brought into the case by special counsel were not urged before the Board nor were they raised in the original complaint. A material condition to the agreement that was reached at the hearing on plaintiffs' motion for a preliminary injunction was prompt disposition of the litigation. When Superior agreed not to undertake to exercise its operating authority pendente lite, plaintiffs gained all that they would have gained by a preliminary injunction and avoided having to post the indemnity bond which the district court doubtless would have required as a condition to granting a preliminary injunction. The parties agreed to submit the case on the complaint and administrative record, cross motions for summary judgment, briefs and argument. Those materials defined the issues that the district court was called upon to decide. And the district court might well have been justified in refusing to give any consideration to the new issues that special counsel was bringing into the case.
 
 
 30
 Apart from that, the new issues were brought to the attention of the district court by means of a motion for leave to amend the complaint. Under Local Rule 8 of the United States District Courts for the Eastern and Western Districts of Arkansas the hearing of arguments on a motion is discretionary with the judge before whom the motion is pending, and that rule contemplates that in general motions will be submitted on supporting and opposing written statements or memorandum briefs.
 
 
 31
 The record in this case reflects that the motion of Fayetteville Savings & Loan for leave to amend was supported by a memorandum brief, a portion of which has been brought into the record before us. And it is rather obvious that in that brief special counsel discussed, at least to some extent, the merits of the contentions that he was advancing.
 
 
 32
 In any event, the district court found the contentions to be without legal merit, and we agree with the district court. This being so, plaintiffs sustained no prejudice from the fact that the trial judge did not call for oral arguments or formal briefing with respect to the issues tendered by the amendment.
 
 
 33
 Plaintiffs complain that the regulation which appears as 12 C.F.R. § 556.5(b) (5) (1976) unlawfully shifted to them the burden of proof in the proceedings before the Board. We disagree. In pertinent part the regulation is as follows:
 
 
 34
 As a general policy, the Board encourages the establishment of branch offices and other office facilities by Federal associations in communities and market areas which either are not serviced or are underserviced by existing savings and loan facilities. In addition, the Board favors increasing the level of competition, by permitting more than one savings and loan facility in a market area, to provide convenient, alternative choices resulting in better service to the public. Since the Board's general policy is to encourage expansion through branching, protests to applications for office facilities will have to be increasingly persuasive and factually documented to adversely affect the Board's decisions on such applications.
 
 
 35
 In our opinion that regulation is nothing more than a policy statement and does not shift the burden of proof with respect to a branching application from the proponent to the protestants.[5]
 
 
 36
 In the amendment to the complaint it was alleged that the Board has no authority to authorize a federal savings and loan association to establish a branch in an area that is already being served by a state chartered institution. Again we disagree. The mere presence of a state chartered institution in the area to be served by the proposed branch of the federally chartered institution is not a bar to the establishment of the branch, although, of course, the existence of other financial institutions in the area is a factor to be considered by the Board in passing upon the application for branching authority.
 
 
 37
 Finally, we consider plaintiffs' argument that the relevant provisions of the Home Owners Loan Act of 1933 should be so construed as to limit the branching of established federal savings and loan associations to locations in such close proximity to their home offices that the branches may properly be considered as subject to the "local control" said to be contemplated by 12 U.S.C. § 1464(a).
 
 
 38
 In discussing that argument we will concede to the plaintiffs that if Superior's branch is established in Fayetteville, it will be controlled by Fort Smith and Sebastian County residents and not by persons residing in Fayetteville or in Washington County. We do not think that that fact, however, precluded the Board from granting the application.
 
 
 39
 Although Fayetteville, including its surrounding trade area, is a substantial distance north of Fort Smith, it is in Arkansas and is within one hundred miles of Fort Smith. And we are of the opinion that in the present state of the law the Board had the discretionary power to authorize the branch in question assuming that the criteria set out in 12 C.F.R. § 545.14(c) were met, as the district court found that they were.
 
 
 40
 We take judicial notice of the fact that with the passing of the years Congress has steadily broadened the lending areas of federal savings and loan associations. When North Arlington Nat'l Bank v. Kearny Federal Savings & Loan Ass'n, supra, was decided in 1951, loans had to be secured by mortgages on property located within fifty miles of an association's home office. When then District Judge Stephenson originally decided the Central Savings & Loan Ass'n of Chariton, Ia. case, supra, in 1968, the lending radius was one hundred miles from the home office. And today, as we have pointed out, an association may make loans secured by mortgages on property located within one hundred miles of the home office or at more distant points within the same state as that in which the home office is located. And in broadening the lending areas of associations Congress did not see fit to impose any geographical restrictions on the authority of the Board to grant branching authority, apparently preferring to leave the matter to the informed discretion of the agency.
 
 
 41
 The subject of branch savings and loan associations like the subject of branch banks, is a controversial one and is open to legitimate debate. Certainly it can be argued that from the standpoint of financial or economic policy it is undesirable for a variety of reasons to permit a savings and loan association with its home office in one city to establish a branch in another city and trade territory as far away from the home office as Fayetteville is from Fort Smith.
 
 
 42
 We feel, however, that such an argument should be addressed to the Board or to Congress rather than to the courts, and that if restrictions more rigorous than those that now exist are to be imposed on the authority of the Board to grant branching authority, those restrictions should be self-imposed by the Board or should result from Congressional legislation.
 
 
 43
 Affirmed.
 
 
 
 *
 The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 Some of the plaintiff associations are chartered by the Board; the others are chartered by the State of Arkansas. The federal associations are First Federal Savings & Loan Association of Fayetteville, Arkansas; Washington Federal Savings & Loan Association of Springdale, Arkansas; and First Federal Savings & Loan Association of Rogers, Arkansas. The state associations are Fayetteville Savings & Loan Association of Fayetteville, Arkansas; American Savings & Loan Association of Springdale, Arkansas; Benton County Savings & Loan Association of Bentonville, Arkansas; and Liberty Savings & Loan Association of Siloam Springs, Arkansas
 
 
 [2]
 Subject matter jurisdiction of the district court is established. We have jurisdiction pursuant to 28 U.S.C. § 1291(a)
 
 
 [3]
 Essentially the same criteria are employed by the Arkansas Savings & Loan Association Board in passing upon an application for operating authority filed by an institution seeking an Arkansas state charter. See West Helena Savings & Loan Ass'n v. Federal Home Loan Bank Board, 553 F.2d 1175 (8th Cir. 1977)
 
 
 [4]
 As has been seen, a federal savings and loan association may lend money secured by a mortgage on real estate located in a state other than that of the association's domicile provided that the property is within one hundred miles of the home office of the association. This case presents no question as to whether the Board may authorize an association domiciled in one state to establish a branch in another state if the branch is within one hundred miles of the association's home office since Superior's proposed branch in Fayetteville is within the State of Arkansas and also is within one hundred miles of Fort Smith
 
 
 [5]
 Some slight support for plaintiffs' position is to be found in a statement appearing in the elaborate opinion of the district court in West Helena Savings & Loan Ass'n v. Federal Home Loan Bank Board, 417 F.Supp. 220, 231 (E.D.Ark.1976). While we affirmed the decision of the district court in that case, we pointed out that we did not necessarily agree with everything that was said in the district court's opinion. West Helena Savings & Loan Ass'n v. Federal Home Loan Bank Board, supra, 553 F.2d at 1180. The question presented in that case was quite different from the question or questions presented in this one