**MADISON COUNTY BUILDING AND LOAN ASSOCIATION et al., Appellants,**

**v.**

**The FEDERAL HOME LOAN BANK BOARD et al., Appellees.**

**No. 79–1969.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1980.

Decided June 4, 1980.

---

George H. Moyer, Jr. (on brief), Moyer, Moyer & Egley, Madison, Neb., and Richard P. Nelson (on brief), Lincoln, Neb., argued; William J. Morris, Lincoln, Neb., and George H. Moyer, Madison, Neb., on brief for appellants.

Michael L. Seabolt (on brief), Gen. Counsel, Federal Home Loan Bank Bd., Washington, D.C., argued; Harold B. Shore and Harvey Simon, Washington, D.C., on brief for appellees.

Before LAY, Chief Judge, ROSS, Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

First Federal Savings & Loan Association of Lincoln, a federally chartered savings and loan association, requested the Federal Home Loan Bank Board's (FHLBB) permis-

---

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

sion to open a limited facility branch office in Madison, Nebraska. The FHLBB granted First Federal's request over the protest of several financial institutions in the area. These protestants then brought an action in federal district court, claiming that the agency's action was arbitrary, capricious and an abuse of discretion. The District Court initially found for the plaintiffs, but reversed itself after a rehearing and granted judgment for the FHLBB. This appeal followed.

The FHLBB was established by Congress to regulate federal savings and loan associations. It is given the power to charter federal S & L's if in the judgment of the Board "a necessity exists for such an institution in the community to be served," there is a "reasonable probability of its usefulness and success," and the institution "can be established without undue injury to properly conducted existing local thrift and home-financing institutions." 12 U.S.C. § 1464(e). Although its authority to do so is not explicit, the FHLBB has allowed branching by federal associations. *See First National Bank v. First Federal Savings & Loan Assoc.*, 225 F.2d 33, 35 (D.C. Cir. 1955) (branching authority upheld); *North Arlington National Bank v. Kearney Federal Savings & Loan Assoc.*, 187 F.2d 564 (3d Cir.) (branching authority upheld), *cert. denied*, 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617 (1951).

The process of establishing a branch is governed by regulation 12 C.F.R. § 545.14. In determining the appropriateness of a branch the FHLBB essentially utilizes the statutory criteria set forth for granting a charter. The applicant is required to show that:

"(1) there will be at the time the branch is opened a necessity for the proposed branch office in the community to be served by it; (2) there is a reasonable probability of usefulness and success of the proposed branch office; and (3) the proposed branch office can be established without undue injury to properly conducted existing local thrift and home-financing institutions." 12 C.F.R. § 545.-14(c).[1]

A limited facility branch, as its name indicates, is one with restrictions on its size and functioning, usually in the area of staff and capital investment. 12 C.F.R. § 545.14(j). An applicant for a limited facility branch may win approval with a lesser showing of necessity, usefulness and success than that required for a full branch office. *Id.*

The standard of review [2] for FHLBB branching decisions is found at 5 U.S.C. § 706(2)(A):

". . . The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

\* \* \* \* \* \*

In making the foregoing determinations, the court shall review the whole record [3]

---

1. The branching regulation has since been amended to simplify the language and to add a fourth requirement that the applicant for the branch show its performance in meeting the credit needs of existing local communities.

2. In some early cases courts held that FHLBB branching decisions were not reviewable because they were "committed to agency discretion by law" under what is now 5 U.S.C. § 701(a)(2). *See Federal Home Loan Bank Board v. Rowe*, 284 F.2d 274, 277–78 (D.C. Cir. 1960); *First National Bank v. First Federal S & L Assoc.*, 225 F.2d 33, 36 (D.C. Cir. 1955); *Bridgeport Federal S & L Assoc. v. FHLBB*, 199 F.Supp. 410 (E.D. Pa. 1961), *aff'd*, 307 F.2d 580 (3d Cir. 1962), *cert. denied*, 371 U.S. 950, 83

S.Ct. 504, 9 L.Ed.2d 499 (1963). There is no question in recent cases about the reviewability of Board branching authorizations.

3. There is a dispute between the parties about whether certain internal staff memoranda and recommendations should be considered part of the record on review. Although these documents may have been used by an agency in reaching a decision, they may be excluded from the record because of concerns over proper agency functioning. *See First Federal S & L Assoc. v. FHLBB*, 426 F.Supp. 454, 457 (W.D. Ark. 1977), *aff'd*, 570 F.2d 693 (8th Cir. 1978); *see also Environmental Protection Agency v. Mink*, 410 U.S. 73, 86–92, 93 S.Ct. 827, 835

or those parts of it cited by a party." (Footnote added.)

The agency action here was the Board's decision that First Federal had met the regulatory requirements for establishing a limited facility branch. This decision was based on the Board's conclusion that a limited degree of necessity, usefulness and probable success had been shown for the branch, and that no undue injury would be suffered by local existing institutions.

The resolution conveying the Board's decision merely states that the regulatory criteria were met.[4] The FHLBB frequently uses this form to announce its branching decisions. The Seventh Circuit recently found such a resolution to be inadequate for judicial review. *City Federal Savings & Loan Assoc. v. FHLBB*, 600 F.2d 681 (7th Cir. 1979). That is the only court which has made such a ruling, and the decision appears to be based on an erroneous view of the nature of § 706(2)(A) review.

In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971), the Supreme Court states that when reviewing agency action under § 706(2)(A) to determine whether it was arbitrary, capricious or an abuse of discretion, a court must inquire "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." This standard was further elucidated in *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974), where the Court explained that the reviewing court need only ascertain that there is a rational connection between the facts found and the choice made by the agency. *See*

Federal Communications Comm. v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 803, 98 S.Ct. 2096, 2116, 56 L.Ed.2d 697 (1978); *First National Bank v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975).

■ *Overton* makes it clear that § 706(2)(A) does not require that the agency make any formal findings of fact, 401 U.S. at 417, 91 S.Ct. at 824, although if the bare record does not disclose the factors considered by the agency or its construction of the evidence, the reviewing court may require further explanation from the agency, 401 U.S. at 420, 91 S.Ct. at 825. In *Camp v. Pitts*, 411 U.S. 138, 140, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1973) (review of Comptroller of the Currency's refusal to grant a bank charter), the Court reiterated that the Administrative Procedure Act does not require formal findings for § 706(2)(A) review. The Court also stated that further explanation of agency action should be sought only when the initial failure to explain is such "as to frustrate effective judicial review." 411 U.S. at 142–43, 93 S.Ct. at 1244. The Court noted that in *Camp*, unlike *Overton*, there was an explanation, although "curt," giving a determinative reason for the agency action, 411 U.S. 143, 93 S.Ct. at 1244. One is left with the impression that the Court felt no further explanation was necessary, and that the agency conclusion should be judged as is by the appropriate standard of review.

*Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), on which the Seventh Circuit heavily relied in the *City Federal* case, did require the Secretary of Labor to give a statement of reasons to facilitate review under § 706(2)(A). The

---

838, 35 L.Ed.2d 119 (1973) (Freedom of Information Act case). No discussion of this issue is necessary because treating the internal memoranda as part of the record does not change our decision.

**4.** The resolution reads in pertinent part:
"WHEREAS, the Board has considered the complete record of the cause and the merits of the application . . . .
WHEREAS, it is determined by the Board that the application satisfies the regulatory require-

ments of paragraph (c) of said Section 545.14 as to necessity and reasonable probability of usefulness and success, to a degree which would support a limited operation of a branch office, and it is further determined that the proposed limited facility branch office can be established without undue injury to properly conducted existing local thrift and home-financing institutions:
IT IS HEREBY RESOLVED, that said application is hereby approved . . . . ."

Court, however, clearly viewed this as a requirement of the Labor-Management Reporting and Disclosure Act, not the Administrative Procedure Act. 421 U.S. at 573, 95 S.Ct. at 1860. Of course, it would be helpful to a reviewing court if the Board would provide a more detailed or more precise statement of its reasons for granting or denying a branch application. But that is very different from saying that effective judicial review will be frustrated without such a statement.

■ Requiring a detailed explanation undermines the Administrative Procedure Act's distinction between formal and informal agency action. Each year the FHLBB processes a large number of branch and charter applications, in addition to numerous other duties. It would significantly burden the Board to have to give an in-depth explanation of each of its actions merely because judicial review was a possibility. Congress apparently intended to give the FHLBB wide discretion to apply its expertise in this difficult area, and believed the exercise of that discretion should be subject to the very limited review of § 706(2)(A). That review is conducted by comparing the agency action with the administrative record. *Camp v. Pitts* leads to the conclusion that the form of decision used here does not prevent the appropriate judicial review. *See Elm Grove Savings & Loan Assoc. v. FHLBB*, 391 F.Supp. 1041, 1043 (E.D.Wis.1975) (following *Camp*); *Lyons Savings & Loan Assoc. v. FHLBB*, 377 F.Supp. 11, 25 (N.D.Ill.1974) (following *Camp*); *Benton Savings & Loan Assoc. v. FHLBB*, 365 F.Supp. 1103, 1104 (E.D.Ark. 1973) (following *Camp*).

■ The FHLBB has given us the determinative reason for its approval of the branch—all the regulatory criteria were satisfied. Our task is to decide if the Board considered the relevant factors in making this decision, and to examine the record to see if it reflects a clear error in judgment on the agency's part, or whether it provides a rational basis for the agency's choice.

The District Court conducted a very careful review and we agree with the Court's finding that the Board's action was not improper.

One of the major objections of the protestants was that the primary market area (PMA) for the limited facility was overstated, and therefore the Board did not properly evaluate the need and probable usefulness and success for the branch. The record reveals that the agency was aware that the PMA was unrealistic, and the Board considered that in making its decision. Madison County Building & Loan Association was the only S & L physically located in Madison. It is a State institution and was uninsured.[5] This does appear to be a marginal application and we might have decided differently than the agency. However, these matters are left to the agency's discretion and there was evidence from which the Board could rationally conclude that the limited facility met the criteria of necessity and probable usefulness and success.

The remaining criterion of no undue injury is basically concerned with the possibility of competitive harm. Few businesses welcome competition. The protestants here raise the specter of a giant S & L coming into an area and devouring the existing local institutions. Yet the record reveals that the major protestants, Madison County Building & Loan Association and Norfolk First Federal Savings & Loan Association, are well-run and in extremely strong financial position. The Board believed they could endure some competition in the Madison area without *undue* harm, and the record provides at least a rational basis for this conclusion.

The extent to which financial institutions should be permitted to branch is a very controversial topic. The Board has put all parties on notice of its position on branching in a policy statement found at 12 C.F.R. § 556.5(b)(5):

"As a general policy, the Board encourages the establishment of branch offices

---

5. The transcript of the Board meeting at which the application was approved shows that the Board members also apparently felt that Madi-son might not be aggressive enough in its service to the local area.

and other office facilities by Federal associations in communities and market area which either are not serviced or are underserviced by existing savings and loan facilities. In addition, the Board favors increasing the level of competition, by permitting more than one savings and loan facility in a market area, to provide convenient, alternative choices resulting in a better service to the public."

Adherence to this policy is within the Board's discretion. Either Congress or the Board, not this Court, is the appropriate body to initiate a change in this policy. *See First Federal Savings & Loan Assoc. v. FHLBB,* 570 F.2d 693, 701 (8th Cir. 1978).

The judgment of the District Court is affirmed.

ROSS, Circuit Judge, concurring:

I concur in the result reached by the majority solely because the standard of review imposed upon us by 5 U.S.C. § 706(2)(A) and the cases interpreting the statute leave to this court practically no alternative. In my opinion, the granting of this charter just a few miles away from one it had very recently granted First Federal in Norfolk was unbelievably irresponsible, but I cannot say that there was *no* rational connection between the facts found and the choice made.